**Dennis WHITCOMB, et al., Plaintiffs,**

v.

**JEFFERSON COUNTY DEPARTMENT OF SOCIAL SERVICES, Defendants.**

Civ. A. No. 86–C–1270.

United States District Court,
D. Colorado.

Sept. 8, 1987.

Rowe P. Stayton, Denver. Colo., for plaintiffs.

G.E. Shields, Lakewood, Colo., for defendants.

## ORDER

CARRIGAN, District Judge.

This is a federal civil rights action commenced under 42 U.S.C. § 1983 against the defendant J.B. Patterson, a Jefferson County, Colorado, Deputy Sheriff, and the defendants Sherrin Ashcraft, Rose Stager and Sharon Williamson, employees of the Jefferson County Department of Social Services. Plaintiffs are Dennis Whitcomb, his wife Marilyn Whitcomb, and the Whitcomb's two daughters, Sasha (age 7) and Somerset (age 3). Plaintiffs allege that they were deprived of federally protected civil rights by actions the defendants took after receiving a report that Mr. Whitcomb was sexually abusing Sasha and Somerset.

Defendants have filed motions to dismiss, and the plaintiffs have opposed those motions. Oral argument has been heard and the motions have been fully briefed. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

### 1. Statement of Facts Alleged by Plaintiffs.

When considering a motion to dismiss, I must treat as true the facts alleged in the complaint, and I must construe these facts in the light most favorable to the plaintiffs, for dismissal before discovery or trial is a drastic remedy. For that reason, the "facts" stated here are as they are asserted in the plaintiffs' complaint. That complaint alleges that on or about May 3, 1985, Dr. Butch Levy, a Colorado physician, reported to the Jefferson County Department of Social Services that Mr. Whitcomb recently may have sexually abused Sasha and Somerset Whitcomb. Dr. Levy's report was based upon statements made to him by the Whitcomb's baby-sitter.

As a result of that report, the defendants Ashcraft and Patterson went to the girls' daycare center where Ashcraft interviewed them. Mrs. Whitcomb was not notified of this interview. During the interview, the three-year-old girl, Somerset, made some statements that could be construed as incriminating her father. The seven-year-old girl, Sasha, however, said nothing that incriminated her father.

Mrs. Whitcomb arrived at the daycare center while Ashcraft was still interviewing the girls. Ashcraft told Mrs. Whitcomb that Mr. Whitcomb was being arrested for child abuse and that the two girls were being removed from Mrs. Whitcomb's care. Mrs. Whitcomb objected to removal of the children and offered to obtain a temporary restraining order that would prohibit contact between her husband and the children. She also offered to stay in a "safe house," or with friends or relatives, to further insure that no contact would occur between Mr. Whitcomb and the children.

Defendants, nonetheless, took the girls from their mother's control without giving the plaintiffs further notice or opportunity to be heard. Defendants then filed a dependency and neglect petition in the Jefferson County district court.

The girls were thus kept out of the family home for approximately five days, whereupon they were returned home pursuant to a state court order. During the next few weeks, the defendants allowed Mr. Whitcomb to see the children only under supervised status, and, it is alleged that they continually intimidated Mrs. Whitcomb.

### 2. Discussion.

Plaintiffs seek substantial damages claiming that the defendants' actions deprived them of their constitutional rights "to preservation of family integrity, the right to privacy, the right to due process of law, and the freedom from summary judgment." (Complaint, paragraph 13.)

Defendants contend that their motion to dismiss should be granted because they are immune from liability. I have previously held that Colo.Rev.Stat. § 19–10–110 does not grant the defendants absolute immunity on the ground that a state immunity statute cannot be invoked to defeat a federal civil rights claim. See order dated November 24, 1986. The issue now before me

is whether the defendants are entitled to either an absolute or qualified immunity.

■ Social workers and sheriff's deputies are entitled to qualified immunity when, acting upon a good faith belief that a parent is abusing a child, they take the child from the family home. *See Myers v. Morris,* 810 F.2d 1437, 1462 (8th Cir.1987); *Czikalla v. Malloy,* 649 F.Supp. 1212, 1214–15 (D.Colo.1986). "Qualified immunity," means that "government officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See Davis v. Scherer,* 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984) (immunity standard of *Harlow* applies in § 1983 actions).

■ When the affirmative defense of qualified immunity is properly raised, the plaintiff has the burden of convincing the court that his asserted federal constitutional or statutory rights were clearly established at the time of the conduct at issue. *Id.* at 197, 104 S.Ct. at 3020–21; *Lutz v. Weld County School Dist. No. 6,* 784 F.2d 340, 342–43 (10th Cir.1986). Where a plaintiff fails to meet that standard, the court is required to enter judgment in favor of defendants who have pleaded the immunity defense. *Lutz,* 784 F.2d at 343.

Defendants here have asserted the defense of qualified immunity. Therefore, I must determine whether the federal rights here asserted by the plaintiffs were clearly established at the time the defendants acted.

■ Although the plaintiffs have alleged that the defendants' actions interfered with their Fourteenth Amendment rights of privacy and freedom to raise a family, a claim that a constitutional provision applies to one's situation is not equivalent to asserting that a public official violated a clearly established right of which a reasonable person would have been aware. The United

States Supreme Court has not fully explained what it meant by the phrase "clearly established statutory or constitutional rights," but it has ruled that government officials are not "charged with predicting the future course of constitutional law." *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).

■ Undoubtedly, the privacy and autonomy of familial relationships is among the interests protected by the Fourteenth Amendment. *Lehr v. Robertson,* 463 U.S. 248, 258, 103 S.Ct. 2985, 2991–92, 77 L.Ed. 2d 614 (1983); *Bohn v. County of Dakota,* 772 F.2d 1433, 1435–36 (8th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986), and cases there cited. However, the interest of the overall family is counterbalanced by interest of a child within that family in freedom from abuse and by the government's interest in protecting powerless children who may be subjected to abuse. *Bohn,* 772 F.2d at 1438–39. Moreover, the immediate removal of a child, without parental consent, or without a prior notice and court order, is permissible when there is a substantiated indication that the child's safety is threatened. *Id. See also Lossman v. Pekarske,* 707 F.2d 288, 291–92 (7th Cir.1983); *Duchesne v. Sugarman,* 566 F.2d 817, 826 (2d Cir.1977). Thus, the interest in keeping the family unit intact does not eclipse the public interest when child abuse is suspected, *Myers v. Morris,* 810 F.2d at 1463, and whether a plaintiffs' constitutional rights were violated in a particular case would depend on a balancing of these two conflicting interests.

In *Benson v. Allphin,* 786 F.2d 268 (7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986), the court noted that where the outcome of a case depends on balancing competing interests, the law's "application is so fact dependent that the law can rarely be said to be 'clearly established.'" *Id.* at 276. The court added that under *Harlow,* "whenever a balancing of interests is required, the facts of the existing case law must closely correspond to the contested action before the defendant official is subject to liabili-

ty...." *Id.* The court then held that because of the need to balance competing interests in determining whether the First Amendment was violated by state officials' actions in obtaining the discharge of an employee, the officials were entitled to qualified immunity since it was not clearly established at the time of the employee's discharge whether his statements were entitled to constitutional protection.

Here, as in *Benson,* the outcome of the plaintiffs' complaint would depend on the balancing of the competing interests discussed above. Therefore, I find and conclude that the plaintiffs have failed to allege that the defendants violated clearly established constitutional rights of which a reasonable person would have known because they have not alleged *facts* that "closely correspond" to a case where governmental officials were held to have violated a person's constitutional rights. Although the court in *Benson* noted that there may be "a situation in which the defendant's actions are so egregious that the result of the balancing test will be a foregone conclusion, even though prior case law may not address the specific facts at issue," 786 F.2d at 276 n. 18, the plaintiff's complaint does not allege any such "egregious" violation. Plaintiffs' complaint asserts merely that the defendants acted hastily and without sufficient cause in removing the children. It is doubtful whether such allegations would support a claim that the defendants acted maliciously. Yet, even if they would support such a claim, in *Harlow* the Court stated that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." 457 U.S. at 817–18, 102 S.Ct. at 2738.

Plaintiffs also contend that the defendants deprived them of their rights by failing to conduct an investigation that met the requirements of Colo.Rev.Stat. § 19–10–109 before they took the girls from Mrs. Whitcomb's care. Section 19–10–109 requires that the county department of social services make a thorough investigation immediately upon receiving any report of known or suspected child abuse or neglect. Officials should, of course, conform their conduct to applicable statutes and regulations. However, officials sued for constitutional violations "do not lose their qualified immunity merely because their conduct violates some [state's] statutory or administrative provision." *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). Therefore, I find and conclude that the defendants are entitled to qualified immunity.

Finally, the plaintiffs contend that the defendants deprived them of their civil rights by intimidating Mrs. Whitcomb. Although intimidation can amount to deprivation of clearly established rights, the plaintiffs have not alleged any facts suggesting how the defendants' action prevented the plaintiffs from exercising any federally guaranteed rights. Therefore, this claim also must be dismissed.

Accordingly, it is ordered that the defendants Patterson, Ashcraft, Stager and Williamson's motions to dismiss are granted, and this action is dismissed without prejudice.