**Timothy A. FRANZ, and Ashley M. Franz, a minor, By and Through Her Next Friend and Natural Guardian, Timothy A. Franz, and Katherine A. Franz, Plaintiffs,**

v.

**Richard LYTLE and Jeanette Schlabach, Defendants.**

**Civ. A. No. 89–1312–T.**

United States District Court, D. Kansas.

April 15, 1992.

possibility is inherent in the unavailability of a

consolidation procedure.

James S. Phillips, Jr., Phillips & Phillips, Chartered, Wichita, Kan., for plaintiffs.

Dennis E. Shay, Smith, Shay, Farmer & Wetta, Wichita, Kan., James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for defendants.

## OPINION AND ORDER

THEIS, Senior District Judge.

Plaintiffs Timothy and Katherine Franz and their two-year old child, Ashley Franz bring this § 1983 suit against Defendants Richard Lytle and Jeanette Schlabach, police officers for the city of Haysville, Kansas in connection with a child neglect or sexual abuse investigation. The plaintiffs allege that the defendants, by engaging in unconsented inspections of Ashley's vaginal area and by forcibly removing the child for medical examination, violated their Fourth and Fourteenth Amendment right to be free from unreasonable searches and right to familial integrity. Additionally, the defendants allegedly interfered with the plaintiffs' right to enjoyment of property. The plaintiffs also present pendent state claims based on invasion of privacy, trespass and deprivation of liberty. Defendants move for summary judgment on the ground that they are entitled to qualified immunity against the § 1983 claim; they also assert the discretionary function defense against the pendent claims.

## UNCONTROVERTED FACTS

On October 19, 1988, Susan Brickley, a neighbor of the Franzes, reported to the police that two-year old Ashley Franz, who was playing near her house, was unsupervised by her parents and was wet and unclean. Officer Lytle responded to the call, knowing only that the call "had something to do with a child, possibly in need of care." Upon arrival at Brickley's home, Brickley told Officer Lytle that she

thought Ashley had a diaper rash; there was no mention of sexual abuse or molestation. Lytle requested Brickley to remove Ashley's diapers without obtaining parental consent. He visually inspected Ashley's vaginal region and found a "very severe rash." He took photographs of the rash. Lytle then went to the Franz home and questioned Ashley's mother, Katherine Franz. Lytle subsequently indicated to Captain Gary Johnson of the Haysville Police Department that he was investigating a possible molestation case involving the Franz family.

On October 20, 1988, Defendant Lytle interviewed Paula Lassiter, a former neighbor of the plaintiffs, who reported that Ashley was not supervised and "soaked [with urine] all the time." Officer Lytle, accompanied by Officer Schlabach, then went to the Franz home to inspect Ashley. Katherine allowed the officers to enter the house. She denies, however, that she gave them consent to inspect or physically touch Ashley's body. The defendants asked Katherine to undress Ashley, and proceeded to inspect her vaginal area. Lytle observed what he believed was "some type of discoloration [or] bruises" around Ashley's vaginal region. He touched the area several times, asking Ashley if it hurt, to which Ashley said yes. Lytle was unable to determine, however, whether there had been molestation or sexual abuse.

After conducting the inspection, Lytle requested that Katherine voluntarily take Ashley to Wesley Hospital for a medical examination. When the plaintiffs hesitated and inquired about who was going to pay for the medical examination, Lytle responded: "[W]e can do it this way or we can take the child into protective custody and take her up to the hospital and then have her put in a facility."

While the officers were in the Franz home, Ashley's father, Timothy Franz, arrived. He requested the officers to leave his home and wait out in the car but they refused, asserting that they were not letting the girl out of their sight. The Franzes then drove Ashley to Wesley Hospital, escorted by the police officers. The plaintiffs maintain that they did not drive to the hospital voluntarily, nor consent to the medical examination.

At the hospital, the officers refused to let the plaintiffs out of their sight. Officer Schlabach followed Katherine and Ashley into the bathroom. Ashley was then examined by Dr. Davidson, who found some "mild redness" and concluded that Ashley had a rash from wearing nylon panties. The police officers apologized, and the Franz family returned home.

## DISCUSSION

In considering a motion for summary judgment, the court is mindful that "summary judgment is a drastic remedy," and should be awarded with care. *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988). Summary judgment is appropriate only when "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). All factual disputes and inferences are construed in favor of the non-moving party. *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 979 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990).

Qualified immunity claims are governed by the objective albeit fact-intensive "clearly established law" standard enunciated in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under *Harlow*, an official who is entitled to raise the qualified immunity defense may not be held personally liable for monetary damages under § 1983 if his actions were objectively reasonable, as assessed in light of the general rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In short, § 1983 liability attaches when the official's actions, at the time of occurrence, violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

■ The burden of proving the existence of a clearly established right rests upon the plaintiffs. *E.g., Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990). A § 1983 plaintiff must show that the law is clearly established in a particularized sense, and not simply identify a clearly established right in the abstract. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

Plaintiffs allege that the defendants violated their Fourth and Fourteenth Amendment rights. According to the plaintiffs, the warrantless nude examinations and photographs of Ashley and her coerced removal from her home constitute an unreasonable search and seizure. The plaintiffs also contend that the forcible removal of Ashley from her home and coerced medical examination violate the plaintiffs' substantive due process right to preservation of family integrity and familial association. In addition, the defendants' refusal to leave the Franz home after being ordered to do so allegedly encroached upon the plaintiffs' right to be free from interference with the enjoyment of property.

*Unreasonable Search and Seizure*

■ In addressing the plaintiffs' Fourth Amendment claim, the crucial inquiry is whether, at the time the defendants acted, it was clearly established law that a child abuse investigation conducted by police officers is subject to the probable cause or warrant requirement. Defendants cite *Darryl H. v. Coler*, 801 F.2d 893, 901–02 (7th Cir.1986), for the proposition that the visual inspection of a child's nude body for signs of child abuse does not require a warrant or probable cause. According to the defendants, even if the warrantless searches at issue were found to be unconstitutional, the defendants are nonetheless qualifiedly immune because the law on child abuse investigations, at the time of their actions, was not clearly established.

Defendants fail to recognize, however, that the holding of *Darryl H.* is limited to child abuse investigations conducted by *social workers*. *See id.* It is true that the law, as of 1988, was not clearly established as to whether the Fourth Amendment required a social worker to comply with the probable cause or warrant requirement. The federal courts have been divided on this issue. *See Kimmett v. Ryan*, 1989 WL 23772, *5 (D.Colo.1989) ("In all cases, the courts have held that the law as to the constitutional right of a parent is not clearly established as to a *social worker* making the discretionary decision as to whether to remove a child from the home where there is suspected child abuse.") (Emphasis added); *Donald M. v. Matava*, 668 F.Supp. 703, 709 (D.Mass.1987) (the law is unclear as to whether warrantless home visits by social workers investigating child abuse violate Fourth Amendment). *Compare Darryl H.*, 801 F.2d at 902 (no probable cause or warrant requirement) *with Good v. Dauphin County Social Servs.*, 891 F.2d 1087, 1094 (3d Cir.1989) (warrantless search of home to investigate child abuse unconstitutional absent consent or exigent circumstances). Indeed, the Tenth Circuit has acknowledged this split in the circuits, and has conceded that this issue still remains a novel one in the Tenth Circuit. *See Snell v. Tunnell*, 920 F.2d 673, 697 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991) ("we do not have occasion to decide whether a search of a private home [in child abuse investigation] without a warrant or probable cause violates the fourth amendment").[1]

This uncertainty in the law, however, arises in the context of warrantless administrative searches conducted by social workers. The present case is distinguishable because the warrantless searches at issue were part of a criminal investigation

---

1. Although the language used in *Snell* is not restricted to social workers, the Tenth Circuit was addressing the issue of qualified immunity as applied to social workers, and not law enforcement officers. *See Snell*, 920 F.2d at 675 (noting that the only defendants remaining in the case were all employees of the Oklahoma Department of Human Services). As such, the uncertainty in the law, as expressed in *Snell*, is necessarily limited to social workers.

conducted by law enforcement officers. As enforcers of the criminal law, police officers are expected to know the subtleties of the probable cause and warrant requirements. It is hornbook law that police officers are required to conduct searches that comport with the Fourth Amendment. *E.g., Katz v. United States*, 389 U.S. 347, 355, 357, 88 S.Ct. 507, 513, 514, 19 L.Ed.2d 576 (1967) ("searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment [footnote omitted]—subject only to a few specifically established and well-delineated exceptions"). Indeed, police officers grapple with Fourth Amendment requirements as a daily routine. Social workers, on the other hand, have no such fluency of the legal standards. It is understandable, therefore, that the courts are divided on whether to hold social workers responsible for observing the probable cause and warrant requirement. However, it is one thing to say that the courts are divided on the Fourth Amendment standards imposed on social workers, and quite another to say that police officers are also beneficiaries of this division in the law. As such, the cases cited by the defendants are not controlling on the question of whether police officers are required to observe the warrant or probable cause requirement in investigating cases of child abuse.

In determining whether police officers are required to comply with the probable cause or warrant requirement in child abuse investigations, it is not necessary to locate a case "on all fours" with the facts at hand. *Melton v. City of Oklahoma City*, 879 F.2d 706, 729 n. 37 (10th Cir. 1989), *modified on other grounds*, 928 F.2d 920 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 296–97, 116 L.Ed.2d 241 (1991). Law enforcement officers are expected to "relate established law to analogous factual settings," *Eastwood v. Department of Corrections*, 846 F.2d 627, 630 (10th Cir.1988), and "to apply general, well developed legal principles." *Snell,*

920 F.2d at 699 (citing *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144–45 (3d Cir. 1984)).

The Tenth Circuit, without directly holding so, has assumed that probable cause is required in child abuse cases. In *Easton v. City of Boulder, Colorado*, 776 F.2d 1441, 1449 (10th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986), the Tenth Circuit upheld a finding of probable cause to arrest a suspected child molester solely on the basis of the victims' statements. The court's analysis was anchored on the assumption that the police officer was subject to the probable cause requirement, and the court proceeded only to determine whether the circumstances of the case amounted to probable cause.

This court determines that it is a well established legal principle that a police officer who enters a home and conducts a search for incriminating evidence is bound to comply with the warrant or probable cause requirement. Here, the plaintiffs have proffered evidence that the defendants were conducting a child abuse or molestation investigation. Officer Lytle informed his superior officer, Capt. Gary Johnson, that he was investigating "a possible molestation case involving the Franz family." Moreover, the medical report stated that the case involved "sexual abuse." [2]

The court finds that there is sufficient evidence to show that the defendants were conducting a criminal investigation against one or both of Ashley's parents. The searches conducted by the defendants—inspecting Ashley's vaginal area, taking photographs, and removing Ashley for a medical examination—were aimed at uncovering incriminating evidence of sexual abuse by one or both of the parents. Such a criminal investigation clearly falls within the strictures of the Fourth Amendment. The court concludes, therefore, that—at the time of the defendants' actions—the Fourth Amendment clearly prohibited po-

---

**2.** Although the parties dispute over who informed the hospital staff that the case involved child sexual abuse, the plaintiffs—as nonmoving parties—are entitled to all favorable inferences in a summary judgment motion.

lice officers from conducting warrantless searches of a home and a child's body for evidence of criminal sexual abuse absent consent or exigent circumstances or any of the recognized exceptions to the warrant requirement.[3]

Merely identifying the "clearly established law," however, does not end the inquiry. *See Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The court must next determine "whether a reasonable officer could have believed [the defendants'] warrantless search[es] to be lawful, in light of the clearly established law and the information the searching officer[s] possessed." *Id.* at 641, 107 S.Ct. at 3040. Officer Lytle inspected Ashley's body on October 19, 1988 based solely on Brickley's report that she was wet, dirty and unsupervised. Brickley made no mention of sexual abuse. On the contrary, Brickley even informed Officer Lytle that Ashley had diaper rash. Up to this point, Officer Lytle had nothing more than a personal hunch that Ashley was a victim of sexual abuse. After conducting further interviews, Lytle still had no evidence to substantiate his conjecture. When Officers Lytle and Schlabach conducted the second search, they possessed no information that sexual abuse had occurred. Indeed, Lytle conceded that he was unable to detect any positive signs of sexual abuse. Even if probable cause existed, the defendants can point to no exigency that prevented them from duly securing a warrant.

Given the facts as perceived by the defendants, it should have been clear that the circumstances with which the defendants were confronted did not constitute probable cause or exigent circumstances. Furthermore, the court cannot say as a matter of law that the plaintiffs consented to the defendants' actions. Viewed in the light most favorable to the plaintiffs, the facts indicate that no reasonable officer could conclude that the Franzes gave their consent. Indeed, Officer Lytle's threat to take

Ashley into protective custody belies his claim that he believed the plaintiffs consented to his actions. The court concludes, therefore, that a reasonable officer would not have believed that the searches were lawful. The defendants are not entitled to summary judgment on qualified immunity grounds on the Fourth Amendment claim.

*Right to Familial Integrity*

Aside from the Fourth Amendment claim, the plaintiffs allege that the defendants violated their rights to familial integrity without due process of law, in violation of the Fourteenth Amendment. The plaintiffs claim that the defendants, by forcibly removing Ashley from her home and subjecting her to a medical examination by a physician not of her parents' choosing, offended the plaintiffs' right of familial integrity: the right of a family to remain together without the coercive interference of the state. *See Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir.1977). The plaintiffs cite *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1188–90 (10th Cir.1985), to support their assertion that the right of familial integrity is well established in this circuit.

The Supreme Court, in various situations, has recognized an abstract fundamental liberty interest in familial integrity. *E.g. Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (recognizes unwed father's fundamental right in the care and custody of child); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (parents' fundamental interest in religious upbringing); *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) (parents' right to "care, custody, management and companionship" of their minor children); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (parents' fundamental interest in their children's education).

The right to familial integrity, in its numerous permutations, has never, however, been deemed absolute or unqualified. *See,*

---

**3.** The defendants do not claim that the exceptions apply, except for consent. Although consent may obviate the need for a warrant, the issue of consent is generally a factual question

not susceptible to summary disposition. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

*e.g., Prince,* 321 U.S. at 166, 64 S.Ct. at 442 ("the family itself is not beyond regulation in the public interest"). Unlike the *per se* dictates of the Fourth Amendment, the Fourteenth Amendment rights to familial integrity involve a weighing of the parents' rights against the interests of the child and the state. Whether a plaintiff's constitutional rights are violated, then, "would depend on a balancing of these two conflicting interests." *Whitcomb v. Jefferson County Dep't of Social Serv.,* 685 F.Supp. 745, 747 (D.Colo.1987).

■ The general recognition of the right of a family to stay together or to enjoy familial association and privacy is not sufficient, in itself, to amount to a "clearly established law" under *Harlow.* While it is beyond dispute that family privacy and association are constitutionally protected rights, the circumstances in which those rights would be violated remain murky. *See Hodorowski v. Ray,* 844 F.2d 1210, 1217 (5th Cir.1988). The qualified nature of the right to familial integrity, requiring government officials to balance certain rights against others, makes it "difficult, if not impossible, for officials to know when their conduct has violated 'clearly established' law." *Frazier v. Bailey,* 957 F.2d 920, 931 (1st Cir.1992). A reasonable official, "knowing only that [he] must not infringe on family integrity, would not necessarily know what conduct was prohibited." *Id.*

The courts are generally agreed that "if the existence of a right or the degree of protection it warrants is subject to a balancing test, the right can rarely be considered 'clearly established,' at least in the absence of closely corresponding factual and legal precedent." *Myers v. Morris,* 810 F.2d 1437, 1462 (8th Cir.1987), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Benson v. Allphin,* 786 F.2d 268, 276 (7th Cir.1986) (where the outcome of a case depends on a balancing test, the application of the law is so fact dependent that the law can rarely be said to be clearly established unless facts of existing cases closely correspond to the contested action); *Whitcomb,* 685 F.Supp. at 747.

■ This court determines that the right of familial integrity is such a right. *Accord Frazier,* 957 F.2d 920, 931. As the *Frazier* court observed, "while there may be a due process right of 'familial integrity' of some dimensions, the dimensions of this right have yet to be clearly established." *Id.* at 931.

The plaintiffs fail to provide any fact-specific authority indicating that the defendants' actions at issue violate the right to familial integrity. Because the plaintiffs have stated the right to familial integrity only in an abstract, non-particularized sense, they have not borne their burden of proving that the defendants violated the *Harlow* standard. As such, the defendants are entitled to summary judgment on the grounds of qualified immunity. The court thus grants the defendants' motion for summary judgment on the familial integrity claim.

*Interference with Property*

■ Plaintiffs also claim that the defendants, by committing a trespass on their property, have violated the Fourteenth Amendment's guarantee of the right to acquire, enjoy, own and dispose of property. This claim is predicated on the defendants' refusal to leave the Franz home after being asked to do so by Timothy Franz. Plaintiffs cite *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), for the allegedly well-established proposition that unlawful interference of such property right gives rise to a section 1983 action.

The plaintiffs do not dispute that the officers were permitted to enter the Franz home by Mrs. Franz. Although Mr. Franz later requested the officers to leave the house, Mrs. Franz—who initially permitted the defendants to enter the premises—never herself revoked her permission. Given the facts as perceived by the defendants, the court cannot say that reasonable officers would have known that their refusal to leave constituted a trespass.

Although the plaintiffs cite several cases recognizing the right to be free from governmental interference with the peaceful

enjoyment of property, this in no way satisfies the plaintiffs' burden to show that this right is clearly established in a fact-specific, particularized sense. Furthermore, the plaintiffs' reliance on Kansas law to establish the trespass is unacceptable: section 1983 redresses the infringement of federal, not state, rights. *See Donald M.,* 668 F.Supp. at 709. Because the plaintiffs have not sustained their burden of proving that the law was clearly established, the defendants are qualifiedly immune from the property interference claim. On this claim, therefore, the defendants' summary judgment motion is granted.

*Pendent Claims*

Plaintiffs' § 1983 claim is accompanied by state claims of privacy, trespass, and deprivation of liberty. The defendants move for summary judgment on the state claims, arguing that the officers were performing discretionary functions, and are thus shielded from immunity by the discretionary function doctrine.

The Kansas Tort Claims Act exempts a government entity or employee from liability for damages resulting from "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion be abused and regardless of the level of discretion involved." Kan.Stat. Ann. § 75–6104(e) (1989).

 The discretionary function defense is available only when no mandatory duty or guidelines exist, *Hopkins v. State,* 237 Kan. 601, 702 P.2d 311 (1985), and the official has the "power and the privilege to act unhampered by legal rule." *Dougan v. Rossville Drainage Dist.,* 243 Kan. 315, 757 P.2d 272, 277 (1988). The mere exercise of some judgment, however, cannot be sufficient to invoke the defense because "judgment is exercised in almost every human endeavor." *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.,* 249 Kan. 348, 819 P.2d 587, 600 (1991) (quoting *Downs v. United States,* 522 F.2d 990, 995 (6th Cir.1975)). As such, when a police officer exercises professional judgment "within established guidelines," the officer is not shielded from liability. *Car-*

*penter v. Johnson,* 231 Kan. 783, 649 P.2d 400 (1982).

In the present case, the court cannot say as a matter of law that the defendants were left to their own unbridled discretion in conducting the searches. Although the defendants obviously used some measure of judgment in effectuating their investigation, they were nonetheless bound by legal rules—most notably, the United States Constitution—to follow certain procedures and regulations. The defendants cannot, therefore, avail themselves of the discretionary function defense. The defendants' summary judgment motion on the pendent claims is denied.

IT IS BY THIS COURT THEREFORE ORDERED that the defendants' summary judgment motion is hereby granted in part and denied in part.