Patricia **LOPKOFF** and Vincent C. **Todd**, Plaintiffs,

v.

Gregg **SLATER**, Patrick Wilson, Mary Sutton, Steve Evans, and The City of Lakewood, Defendants.

Civ. A. No. 95–D–879.

United States District Court, D. Colorado.

Sept. 26, 1995.

Russell H. Granger, Georgetown, CO, for Plaintiffs.

Christine M. Habas, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

Plaintiffs Patricia Lopkoff ("Lopkoff") and Vincent C. Todd ("Todd") bring an action, pursuant to 42 U.S.C. § 1983, for alleged violations of their constitutional rights against four individual police officers Gregg Slater ("Slater"), Patrick Wilson ("Wilson"), Mary Sutton ("Sutton"), and Steve Evans ("Evans") ("the individual Defendants") and their employer, the City of Lakewood. The action arises from two alleged unlawful searches of Lopkoff's apartment by the Defendants in connection with their investigation of suspected child abuse or neglect involving Lopkoff.

Lopkoff alleges that the individual Defendants, by engaging in unconsented searches of her apartment, violated her Fourth Amendment right to be free from unreasonable searches. Todd, Lopkoff's attorney, alleges that his First and Fourth Amendment rights were violated by actions taken by the individual Defendants in connection with the second search of Lopkoff's apartment. Plaintiffs also claim that the City of Lakewood violated their Fourth Amendment rights through a reckless failure to train and supervise the individual Defendants.

Defendants move for summary judgment on the ground that they are entitled to qualified immunity on the § 1983 claim.[1] For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I. FACTS

The undisputed facts in this matter were difficult to ascertain because Plaintiffs failed to comply with the Court's Hearing, Conference and Trial Procedures, which required Plaintiffs to admit or deny the Defendants' undisputed facts. Thus, the Court determined, to the best of its ability, the undisputed and disputed facts based on the summary judgment related pleadings.

### a. First Visit

On April 21, 1993, Slater and Margaret Griffith ("Griffith"), who is not a party to this action, were dispatched to Lopkoff's apartment as a result of a phone call from Lopkoff's sister, Virginia Martindale. Lopkoff's sister complained that Lopkoff was intoxicated and could not care for her son. They were greeted at the door of Lopkoff's apartment by her three year old son, Michael. Michael allowed Slater and Griffith to enter the apartment, where they stood in the entry hallway. From this vantage, it is undisputed that they could see into at least a portion of the apartment, where they observed that it was cluttered with clothing, boxes, papers and/or bags. Lopkoff met the police approximately four feet into the entry hall. Slater advised her that they were there to check on the welfare of her son because of a call made to the police, to which Lopkoff replied "O.K." Slater smelled alcohol on Lopkoff's breath.

Lopkoff claims to be hearing impaired as defined in C.R.S. § 13–90–202(2), and requires an interpreter for court proceedings.[2] Lopkoff immediately requested an interpreter, and asked if she could call the interpreter and her attorney. Slater told her that she

---

1. Although Defendants jointly moved for summary judgment, the motion and supporting brief do not address the claim against the City of Lakewood. Thus, I make no determination as to whether summary judgment in favor of the City of Lakewood is appropriate.

2. The extent of Lopkoff's ability to converse with people without the aid of an interpreter is in dispute. However, the Court does not need to determine this issue as it is not material to the Court's ruling.

could, to which she responded "no." Griffith then contacted the Lakewood Police Department to obtain an interpreter. Social Services was called to the apartment but did not enter. Another City of Lakewood officer, Ken Stratton ("Stratton"), arrived at the apartment. Slater followed Lopkoff around the apartment, allegedly for reasons of officer safety. Lopkoff did not ask the officers to leave, and she was not interrogated.

Sometime during the police visit, Attorney Todd arrived at the scene and observed Slater, Stratton and Griffith inside the living room/dining room area of Lopkoff's home. Stratton was taking photographs of the inside of the apartment, and the officers had searched the inside of Lopkoff's refrigerator. Todd requested a copy of the officers' warrant or a statement of their authority. Griffith responded that no warrant was needed because they were conducting a plain view search of a crime scene for child abuse, a fact Defendants dispute. Todd disagreed with Defendants' interpretation of the warrant requirement.

Slater advised that Michael Lopkoff was in protective custody and that Patricia Lopkoff was detained subject to being booked for child abuse, which facts Defendants dispute. Todd then told the officers that their presence was unlawful without a warrant, at which time the officers directed that everyone leave the residence. Defendants admit that Todd indicated that he believed a warrant was necessary, but dispute that they told everyone to leave the apartment.

Sergeant Barnes ("Barnes") arrived on the scene and suggested that Plaintiffs leave and return when juvenile detectives arrived on the scene. After a conversation with Todd, Barnes confirmed that Lopkoff was in custody to be charged with child abuse pursuant to C.R.S. § 18–6–401, which fact Defendants dispute. Juvenile Detective Goodwin ("Goodwin") then arrived on the scene as did an interpreter. Goodwin obtained consent from Todd to walk through the home. No criminal charges were ultimately filed against Lopkoff.

Following this visit, Slater spoke with Plaintiff's sister, Virginia Martindale. She informed him that her mother had called her,

worried because Lopkoff had hung up the telephone on her two times, and then would not answer the telephone. She also told Slater that Lopkoff had previously been hospitalized for alcoholism and had suffered black-outs.

**b. Second Visit**

On May 11, 1993, Slater and Wilson were dispatched to Lopkoff's apartment on a report of a mother being abusive to her children. Slater encountered Lopkoff's daughter, Kristina Swain, in the parking lot of the complex, who indicated that her mother had been drinking and yelling at the children, and had hit Kristina in the right shoulder and forearm. Slater and Wilson then attempted to talk to Lopkoff at her front door, to inquire whether the children could stay with their uncle, Ted Martindale, who was at the apartment complex because of a call by Kristina Swain to pick her and her brothers up.

Todd was present at Lopkoff's residence at that time in an attorney-client meeting. Lopkoff told Todd to ask what the police wanted but instructed him not to allow them to enter her home. Wilson requested that Todd produce identification, which Todd did. Slater and Wilson insisted that they needed to speak with Lopkoff. Todd informed them that they could not speak with Lopkoff until an interpreter arrived. Wilson then told Todd they were conducting a criminal investigation and that Todd was interfering. Todd informed the officers that if they sought to interview Lopkoff in the course of a criminal investigation, she would invoke her right to remain silent and they could not interview her.

The police left, and Lopkoff and Todd returned to their meeting. Todd was called back to the door by Slater and Wilson. Defendants Sutton and Evans were now at the scene. Wilson said that they could not wait any longer and had to speak to Lopkoff. Todd requested that Detective Goodwin be called but the officers refused. According to Todd, the officers told him that he would be placed in custody and charged with interference if he did not immediately step aside so

that they could enter the residence, claiming they had this right in the course of their criminal investigation. There is no indication in Todd's affidavit as to who told him this, so the Court must assume that all four of the officers made these statements. Defendants admit only that Todd was told that he would be charged with interference if he did not stop preventing them from speaking with Lopkoff.

Todd asserts in his affidavit that the officers insisted on entering the residence even though Slater and Wilson acknowledged that the children were with Ted Martindale and that no exigent circumstance existed. Slater and Wilson dispute this, claiming they were trying to determine whether the children could leave with Mr. Martindale, and that Plaintiffs refused all efforts to talk to them. Slater and Wilson also assert they were told by Todd that there was a restraining order prohibiting Plaintiff from any contact with Virginia Martindale, and that there were no other relatives who could take the children.

Todd determined that the officers' threat of arrest was credible, stood aside and went to his car to make a telephone call. According to Todd's affidavit, the officers then entered Lopkoff's apartment, at which time Lopkoff fled the home screaming.[3] Slater and Wilson admit that they entered the apartment in an attempt to discuss the children with Lopkoff, but deny that she fled the home screaming.

When the officers exited the residence, they closed the security door behind them, locking Lopkoff and Todd out of the apartment. Todd's computer and briefcase were then also locked in the apartment. Sergeant Barnes responded to a call for assistance from the Plaintiffs, and acknowledged that this agents had left them locked out of the residence. Plaintiffs had to retain the assistance of a professional lock smith, and it took them three hours to gain access to the apartment.

**3.** It is unclear from the record exactly what officers entered and searched the apartment on May 11, 1993. The Complaint alleges that Sutton and Evans entered the apartment. Sutton and Evans dispute this. Plaintiffs' reply brief and Todd's affidavit in support of same assert

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARDS

In considering a motion for summary judgment, the Court is mindful that "summary judgment is a drastic remedy" and should be awarded with care. *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir.1988). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a movant has satisfied the burden imposed by Rule 56, all factual disputes and inferences must be drawn in favor of the nonmoving party. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980).

Qualified immunity claims are governed by the "clearly established law" standard enunciated in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under this doctrine, government officials performing discretionary functions are entitled to immunity unless their actions violate clearly established statutory or constitutional rights of which a reasonable person in the defendants' position would have known. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

The plaintiff in a qualified immunity case has a heavier burden than is normally imposed to avoid summary judgment, since the plaintiff has the burden of proving that defendants' conduct violated a clearly established law. *Hannula v. City of Lakewood,* 907 F.2d 129, 130 (10th Cir.1990). In meeting this burden, a plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant violated it. Instead, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.*

that Slater and Wilson entered the apartment. Viewing the evidence in the light most favorable to Plaintiffs, the Court will assume that all four of the officers entered the apartment on May 11, 1993.

*Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Unless such a showing is made, summary judgment should be granted in favor of the defendant government officials. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). If the plaintiff has made a sufficient showing of the above, the defendants then bear the normal burden of showing that no material issues of fact remain that would defeat their claim of qualified immunity. *Id.*

## B. PATRICIA LOPKOFF'S FOURTH AMENDMENT CLAIMS

■ Plaintiffs' First Claim for Relief alleges that Slater violated Lopkoff's Fourth Amendment rights in connection with the April 21, 1993 search. Plaintiffs' Second Claim for Relief alleges that the four individual Defendants violated Lopkoff's Fourth Amendment rights in connection with the May 11, 1993 search.[4] A Fourth Amendment violation occurs when police engage in a warrantless search and no exception applies, or when police search pursuant to a warrant that is not based on probable cause. *See Specht v. Jensen*, 832 F.2d 1516 (10th Cir. 1987).

In addressing Patricia Lopkoff's Fourth Amendment claim, the crucial inquiry is whether the police officers violated clearly established law in connection with their searches. Neither party cites any specific case law on point. Plaintiffs cite only to general law regarding the Fourth Amendment and a person's expectation of privacy in their home. Thus, I must examine the law as it existed at the time of the alleged violations.

### 1. Lopkoff Was Not Arrested or Taken into Custody

■ Defendants argue that the searches were reasonable and thus in conformity with the Fourth Amendment because Plaintiff was not arrested or taken into custody. First, I conclude that there is a genuine issue of material fact as to whether Plaintiff was taken into custody, since Todd testified in his

affidavit that the police informed him that Lopkoff was in custody to be booked for child abuse. Notwithstanding this issue of fact, Defendants have cited no authority, and this Court has found none, that supports Defendants' argument that entry into an apartment without a warrant is justified if it does not result in a person being arrested or taken into custody. Instead, as Plaintiffs recognize, a search inside a home without a warrant is *per se* unreasonable unless it falls into one of the carefully defined set of exceptions based on exigent circumstances or consent. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

### 2. Requirement of a Warrant

■ The Defendants further argue that the searches were lawful because they occurred in connection with complaints about the welfare of Lopkoff's children, and a warrant was thus unnecessary. Defendants rely on *Artes–Roy v. The City of Aspen*, 31 F.3d 958 (10th Cir.1994) and *Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) as authority for this argument. These cases are inapposite.

Neither *Artes–Roy* or *Wyman* involved a situation, as here, where officers entered and searched a home without a warrant to investigate a child abuse claim. In *Artes–Roy*, a building inspector stepped into the entryway of a home for the limited purpose of informing the occupant of the home that construction was being done on the home in violation of a stop work order. There was no evidence that the inspector was there to investigate criminal activity or to make an arrest. *Artes–Roy*, 31 F.3d at 962. In *Wyman*, the plaintiff sued for an unlawful termination of her AFDC assistance which occurred as a result of her refusal to allow a caseworker to visit her home. There was no unreasonable intrusion or forced entry into her home, and there was no complaint that the home visit had as its purpose obtaining information of criminal activity. *Wyman*, 400 U.S. at 317–320, 91 S.Ct. at 385–87.

---

4. It is unclear from the Complaint whether Lopkoff also claims an unlawful seizure. This issue was not addressed by either party in their briefs; thus, the Court does not address this point herein.

774

Thus, it must be determined whether, at the time of the Defendants' alleged conduct, it was clearly established law that a child abuse investigation conducted by the police is subject to the probable cause or warrant requirement. This precise issue was addressed in *Franz v. Lytle,* 791 F.Supp. 827 (D.Kan.1992), *aff'd,* 997 F.2d 784 (10th Cir. 1993). Although *Franz* was not decided in this District, it was decided in this Circuit and is persuasive authority.[5]

*Franz* involved police officers who, in the course of a possible child abuse case, examined a child without the consent of the parents, stayed in the parents' home when consent to be there was withdrawn, and compelled the parents to take the child to the hospital for an examination. The parents were neither arrested nor taken into custody. The court held that, although the law as of the time of the alleged violations was unsettled as to the ability of *social workers* to conduct warrantless searches, the case was distinguishable as to police officers. This is because the police, as enforcers of the criminal law, should know the subtleties of the probable cause and warrant requirements, and know that warrants are required in connection with investigations of criminal activity. *Franz,* 791 F.Supp. at 830–831. Since the plaintiffs presented evidence that the police were investigating for incriminating evidence of abuse, such an investigation clearly fell within the requirements of the Fourth Amendment, and "absent consent or exigent circumstances or any of the recognized exceptions to the warrant requirement", a warrant was required. *Id.* at 831–832. The court held this was hornbook law and a case "on all fours" with the particular facts in the case did not need to be found. *Id.* at 831.

However, the court therein stated that the inquiry did not end there. It next had to be determined whether a reasonable officer could have believed the warrantless search to be lawful, in light of the clearly established law and the information the searching officer possessed. *Id.* at 832. In *Franz,* the defendant officer first inspected the child's body

based solely on a neighbor's report that she was wet, dirty and unsupervised. No mention of sexual abuse was made; instead, this was merely the officer's hunch. After entering the home and conducting the investigation the next day, the officers still had no clear evidence of sexual abuse. From these facts, the court concluded that "even if probable cause existed, the defendants can point to no exigency that prevented them from duly securing a warrant." *Id.* Thus, a reasonable officer could not have believed the searches were lawful, and summary judgment on qualified immunity was inappropriate.

Other courts have also found that a warrant is required in cases of child abuse in the absence of exigent circumstances or another exception to the warrant requirement. *See Good v. Dauphin County Social Services,* 891 F.2d 1087, 1094–1095 (3rd Cir.1989) (a showing of consent to search or that the child was in imminent danger of serious bodily injury was necessary for entry of home without warrant in case of suspected child abuse); *White by White v. Pierce County,* 797 F.2d 812, 815 (9th Cir.1986) (absent exigent circumstances that the child is abused or neglected and will be injured or can not be taken into custody if warrant is obtained, police can not make warrantless entry into home). *See also Whitcomb v. Jefferson County Dept. of Social Services,* 685 F.Supp. 745 (D.Colo.1987) (the removal of a child from a home without parental consent or a court order is permissible *when there is a substantiated indication that the child's safety is threatened.*)

Applying these principles to this case, I find that clearly established law at the time of the alleged violations required probable cause and a warrant for an investigative search in a child abuse case. Even assuming, without deciding, that probable cause existed to conduct the investigation in this case, it is undisputed that a warrant was not obtained. Thus, the Defendants must show that a reasonable officer would have believed that exigent circumstances existed sufficient

**5.** Since the Tenth Circuit opinion in *Franz* affirming the District Court's opinion was decided after the alleged unlawful conduct of the Defendants, I rely only upon the opinion of the District Court herein.

to allow a warrantless search, or that consent was obtained. These circumstances are examined below by the Court.

### 3. Exigent Circumstances

 Although Defendants have not directly argued that this exception applies, the Defendants' argument that a warrant is not required in suspected child abuse cases implies that sufficient exigency exists in such cases to allow a warrantless search. The burden is upon the government to prove that the officers had both probable cause and that exigent circumstances existed that made a warrantless entry necessary. *U.S. v. Chavez*, 812 F.2d 1295, 1298 (10th Cir.1987).

 There is no absolute test for the presence of exigent circumstances; instead, the unique facts of each controversy must be examined. *U.S. v. Wicks*, 995 F.2d 964, 970 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993). The basic aspects of the exigency exception are that (1) the officers have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others; (2) the search was not motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to believe there is an emergency. *U.S. v. Smith,* 797 F.2d 836, 840 (10th Cir.1986).

 In this case, Slater was first called to Lopkoff's home on April 21, 1993, on a report that Lopkoff was intoxicated and may not be able to care for her son. Although the Plaintiffs state that Lopkoff was listed on police reports as a suspect for child abuse, Defendants have presented no evidence that the threat to Lopkoff's children was immediate or life threatening. Lopkoff's three-year-old son greeted him at the door. Defendants have presented no evidence that the child appeared injured in any way or that he was in immediate danger. The only evidence presented by Defendants as to why they entered the apartment, other than the initial report they received, was the fact that the apartment appeared cluttered from the hallway, and Lopkoff was yelling and not making sense.

This evidence is insufficient to constitute exigent circumstances, particularly in light of the evidence presented by Plaintiffs that Defendants entered and searched the home in connection with a possible criminal investigation, took photographs and inspected the inside of the refrigerator, and informed Todd that Plaintiff was being held subject to being booked for child abuse. Viewing, as I must, the evidence in the light most favorable to Plaintiffs, I do not find that Defendants have met their burden of showing that exigent circumstances existed during the April 21, 1993 visit.

 The second visit on May 11, 1993 occurred as a result of a report that a mother was being abusive to her child. However, it is undisputed that the children were not even present in the apartment, and were outside with their uncle when the second visit occurred. Therefore, I find that the children were not in immediate danger and no emergency existed. Accordingly, I conclude that the Defendants have also failed to meet their burden of showing that exigent circumstances existed during the May 11, 1993 visit.

### 4. Consent

 Finally, Defendants argue that the searches were reasonable because Lopkoff consented to the search. There are three requirements to sustain a finding of consent: (1) there must be evidence that the consent was unequivocal, specific and freely given and intelligently given; (2) the government must prove the consent was without duress or coercion; and (3) there must be convincing evidence of consent, with every reasonable presumption made against the waiver of the constitutional right to be free from a warrantless search. *U.S. v. Gilmer,* 793 F.Supp. 1545, 1552–1553 (D.Colo.1992), *reconsideration granted in part,* 814 F.Supp. 44 (D.Colo.1992). Mere submission to lawful authority does not equate to consent. *U.S. v. Manuel,* 992 F.2d 272, 275 (10th Cir.1993). The government bears the burden of proof that consent was voluntary, and "voluntariness" is a question of fact to be determined based on the totality of the circumstances. *Id.*

In the April 21, 1993 visit, the Defendants assert that Lopkoff's three-year-old son opened the door and allowed Defendants into the entryway of the apartment. Lopkoff met them in the entryway and, after being told that the officers were there to check on the welfare of her son, responded "O.K." Lopkoff then immediately requested an interpreter, and asked if she could call an interpreter and her attorney. Although the officers told her she could, she said "no". However, it appears that at some point she did call her attorney. Slater smelled alcohol on Lopkoff's breath, and observed her yelling and not making sense. However, Lopkoff did not ask the officers to leave the apartment.

Defendants argue that this conduct of Plaintiff Lopkoff evidences voluntary consent to enter the living room/dining room of the apartment, for Slater to observe whether there was food in the refrigerator of the kitchen, and for Slater to follow Lopkoff around the apartment because of alleged concern of officer safety. I believe that the evidence presented by Defendants does not constitute clear evidence of unequivocal consent by Lopkoff that was freely and intelligently given. Instead, I believe that Plaintiffs have presented a genuine issue of material fact as to Lopkoff's consent based on the fact that (i) Lopkoff immediately requested an interpreter and asked that she be allowed to call her attorney; (ii) Lopkoff did call her attorney and request that he come to the apartment; (iii) Lopkoff did not give actual consent for the officers to leave the entryway of the apartment, search the apartment, take photographs and search the refrigerator; and (iv) the officers did not advise Lopkoff of her right to object to the search. Moreover, there is a genuine issue of material fact as to whether Lopkoff was even competent to give knowing consent based on Slater's affidavit testimony that (i) he smelled alcohol on Lopkoff's breath and (ii) Lopkoff was yelling and not making any sense in speaking with him.

■ However, the Court does not need to decide whether Lopkoff actually gave consent as, taking the evidence in the light most favorable to Plaintiffs, Plaintiffs have presented a genuine issue of material fact as to whether consent to remain in the apartment was withdrawn. Todd testified in his affidavit that, upon his arrival, he informed the police that their presence was unlawful without a warrant and was then told to leave the apartment by the police. This testimony creates a genuine issue of material fact as to whether consent, if initially given by Lopkoff, was later withdrawn by her attorney, Vincent Todd, sufficient to defeat summary judgment on this ground as to the April 21, 1993 visit.

■ With respect to the May 11, 1993 visit, Defendants have presented no evidence whatsoever that the officers' entry into the apartment was consensual. Todd testified in his affidavit that he refused to allow the officers to enter the apartment without a warrant, at which time the officers told him to stop interfering and entered the apartment. Defendants have presented no evidence to rebut this. Accordingly, a genuine issue of material fact exists as to whether consent was given to the second search, and summary judgment is not appropriate on this ground.

Based on the foregoing, I find that Plaintiffs have met their burden of showing that the law was clearly established at the time of the alleged violations, and that the Defendants' conduct violated such law. A reasonable officer at the time of the alleged violations would not have believed, based on established authority, that child abuse investigations were lawful without a warrant. Further, I find that Defendants did not meet their burden of showing that no genuine issue of material fact exists as to a justification for the searches. Fact issues exist as to whether a reasonable officer would have believed that exigent circumstances existed and/or that consent was given sufficient to allow the warrantless searches. Accordingly, the Defendants' summary judgment motion on qualified immunity grounds on Lopkoff's Fourth Amendment claims is DENIED.

## C. VINCENT TODD'S CLAIMS

The Third Claim for Relief in the Complaint alleges that the individual Defendants violated Todd's rights protected by the First and Fourth Amendment rights. The Complaint does not state precisely how the De-

fendants violated Todd's Fourth Amendment rights. Moreover, Plaintiff Todd is correct in asserting that Defendants do not assert any argument in their summary judgment motion and supporting briefs as to why summary judgment is appropriate as to Todd's Fourth Amendment rights. Thus, this Court does not determine this issue herein.

With respect to Todd's First Amendment claim, the Complaint is also not clear as to how Defendants violated Todd's First Amendment rights. Plaintiffs argue in their response to the summary judgment motion that Todd has a First Amendment right to free speech. Todd further argues that the individual Defendants were interfering with his right to free speech, in objecting to the Defendants' unlawful conduct in trying to enter Lopkoff's home, when the officers told him he was interfering and threatened him with arrest. Defendants argue that Todd does not have standing to assert a claim.

Plaintiffs present no evidence that Todd was prevented from speaking. The only evidence presented is that the Defendant officers told him he was interfering in their attempts to enter the apartment to speak with Lopkoff, and that they attempted to physically intimidate him. Plaintiffs cite no authority as to how this conduct violated the First Amendment, or that the law as it existed during the visits on April 21, 1993 and May 11, 1993 clearly established that Defendants' conduct was in violation of the First Amendment. Thus, Plaintiffs have not met their burden of overcoming summary judgment as to this claim. Accordingly, summary judgment on Plaintiffs' Third Claim for Relief, to the extent that it alleges violations of Todd's First Amendment rights, is GRANTED.

## III. CONCLUSION

For the above stated reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendants' Motion for Summary Judgment is DENIED as to Plaintiffs' First and Second Claims for Relief to the extent they allege illegal searches in violation of the Fourth Amendment and GRANTED as to the Third Claim for Relief to the extent that it alleges

violations of Vincent Todd's First Amendment rights. Judgment shall enter accordingly.

DONE and ENTERED.