883 F.2d 819
 Joe BURNS, Jr., Plaintiff-Appellant,
v.
COUNTY OF KING, Defendant-Appellee.
Joe BURNS, Jr., Plaintiff-Appellant,
v.
COUNTY OF KING; John Doe, Commissioner, individually and in
his official capacity as Director of Harborview Medical
Center; Carole Warwick, individually and in her official
capacity as Social Worker for the County of King,
Defendants-Appellees.
 Nos. 86-4173, 86-4268.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 8, 1989.
Decided Aug. 29, 1989.
 
 Joe Burns, Jr., Seattle, Wash., in pro per.
 Daniel J. Radin and Steven D. Milam, Office of the Atty. Gen., Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before SCHROEDER, BEEZER and BRUNETTI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Joe Burns, Jr. appeals pro se the district court's order granting the defendants' motion for summary judgment and dismissing his claims under 42 U.S.C. Sec. 1983. Burns contends that social workers gave false information which caused a King County superior court judge to revoke Burns' bond pending the appeal of his conviction for rape. He ultimately tries to show that his due process rights were violated. The principal issue we must decide is whether a state social worker who provides an affidavit to the court in a bond revocation proceeding regarding a defendant's alleged prior violent acts is entitled to absolute immunity from liability under section 1983 for those statements.
 
 
 2
 On July 13, 1982 Burns was charged with kidnap and rape. The Washington Department of Social and Health Services filed a juvenile dependency action for custody of Burns' minor children at that time because Burns was in jail and his wife was in the hospital. From November, 1982 to February, 1983 Elaine Fiddler, a caseworker for the state, provided general supervision and casework services to the family. On February 1, 1983 Burns was found guilty of kidnap and rape in the first degree and sentenced to life imprisonment. On March 31, 1983 the King County superior court authorized Burns' release from custody pending appeal.
 
 
 3
 On April 28, 1983 David Smith, a King County prosecutor, filed a motion for review of Burns' release pending appeal and an affidavit in support of that motion. Smith's affidavit alleged that Burns had threatened the rape victim, and had also threatened to flee the state upon his release from custody. This affidavit was based on information that he then attributed to Elaine Fiddler, Judy Buck, another caseworker, Rebecca Hicks, the guardian ad litem for the Burns children, and Carole Warwick, a caseworker for Harborview Medical Center who worked with Dolores Burns while she was in the hospital. Smith later admitted that Fiddler had not, in fact, provided him with any information about the Burns case. After a hearing on May 6, 1983, at which an affidavit from Carole Warwick was introduced relating Burns' wife's allegations that Burns had physically abused her and intimidated her in the past, the court entered an order denying release from custody pending appeal, and Burns was returned to custody.
 
 
 4
 Burns filed this suit against Warwick, Fiddler, and various other state employees under 42 U.S.C. Secs. 1983 and 1985 (1982) on May 23, 1984. Burns' original complaint was dismissed with leave to amend. In his amended complaint Burns alleged that by providing false information to the prosecutor and the court, defendants Warwick and Fiddler caused the revocation of his bond pending appeal, and that these actions deprived him of his civil rights. Burns also alleged that defendants Alretta Bill, who was Fiddler's immediate supervisor, Karen Rahm, the director of the Department of Social and Health Services, and the Department of Social and Health Services itself violated his civil rights by failing to supervise Fiddler properly. Burns alleged that defendants Robert Jetland, the director of Harborview Medical Center, and Harborview Medical Center violated his rights by failing to supervise Warwick.
 
 
 5
 Summary judgment was granted against Burns on his claims on October 6, 1986. The district court found that Warwick was entitled to absolute immunity for her statements in her affidavit to the court under Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), and that because Warwick was immune, Jetland and the Harborview Medical Center were also not liable. The district court also found that, aside from the question of witness immunity, defendant Fiddler had not in fact provided any information that was relied upon by the court in its bond revocation decision so that she, Bill, Rahm, and the Department of Social and Health Services were not subject to suit. The district court also denied several pretrial motions made by Burns. Burns appeals the dismissal, the entry of summary judgment against him, and the denial of his motions.
 
 
 6
 The district court properly granted summary judgment for defendant Fiddler because the record in this case demonstrates that Fiddler did not provide any information used at the bail revocation hearing. The prosecuting attorney originally stated in his own affidavit, filed when he requested the bail revocation hearing, that Fiddler had provided him with certain information indicating that the plaintiff might be dangerous if released. However, the prosecutor later retracted his statement, stating that the information he had attributed to Fiddler was actually related to him by another person. Fiddler provided no affidavit nor did she testify at the bond revocation hearing. Because the plaintiff's claims against defendants Bill and Rahm were based on allegedly negligent supervision of Fiddler, summary judgment was also properly granted against Burns on these claims.
 
 
 7
 Burns' claim against the Department of Social and Health Services fails because he did not allege or show any deprivation of his rights by a government policy or custom as required by Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).
 
 
 8
 Burns' complaint contains allegations of a conspiracy to deprive him of his civil rights in violation of 42 U.S.C. Sec. 1985. The record in the case, however, lacks any indication that Burns was discriminated against because he is a member of a particular race or suspect class. Burns thus failed to make out a claim under section 1985. See Bretz v. Kelman, 773 F.2d 1026, 1028 (9th Cir.1985) (en banc). Likewise, Burns' claims against all the defendants for a conspiracy to violate his constitutional rights under section 1983 also fail because they were supported only by conclusory allegations. To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy. Coverdell v. Dept. of Social and Health Services, 834 F.2d 758, 769 (9th Cir.1987). Summary judgment was properly granted for the defendants on these claims.
 
 
 9
 Because the alleged wrong from which all of Burns' claims stem is the revocation of his bond based on allegedly false information, the principal issue before us on appeal is whether an individual who supplied an affidavit for use in a bail revocation hearing is entitled to absolute immunity against civil claims. The only defendant named whose affidavit was actually presented at Burns' bail revocation hearing was Carole Warwick. The district court granted summary judgment against Burns on his action against Warwick, holding that Warwick was entitled to absolute immunity for statements made to the court in her affidavit. Burns contends on appeal that in so doing the district court applied the principle of absolute witness immunity too broadly.
 
 
 10
 Under the Supreme Court's decision in Briscoe v. Lahue, 460 U.S. 325, 345-46, 103 S.Ct. 1108, 1120-21, 75 L.Ed.2d 96 (1983), as interpreted by this court in Holt v. Castaneda, 832 F.2d 123, 127 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1275, 99 L.Ed.2d 486 (1988), witnesses are absolutely immune from suits for damages under 42 U.S.C. Sec. 1983 for testimony given at trial, or for testimony given during adversarial pretrial proceedings. In Briscoe, convicted criminal defendants brought suit against police officers, claiming that the officers had given perjured testimony during the defendant's criminal trials. The Supreme Court held that witnesses, including government officials, are absolutely immune from damages liability under section 1983 based on their testimony. Briscoe, 460 U.S. at 326, 103 S.Ct. at 1110. The Court first concluded that witnesses were absolutely immune from suits based on testimony given in a trial at common law. Id. at 330-34, 103 S.Ct. at 1113-15. The court then determined that the importance of obtaining the full participation of witnesses at trial, unfettered by any fear of liability, dictated that absolute immunity should similarly extend under 42 U.S.C. Sec. 1983 to government officials who testified as witnesses at trial. Id. at 342-46, 103 S.Ct. at 1119-21.
 
 
 11
 In this circuit's leading post-Briscoe decision, Holt v. Castaneda, 832 F.2d 123, 127 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1275, 99 L.Ed.2d 486 (1988), we extended the Briscoe analysis to provide absolute immunity for a police witness at adversarial pretrial proceedings. We reviewed the decisions of other circuits in which absolute witness immunity has been extended to various nontrial proceedings, see Holt at 125-26, and concluded that there was no meaningful distinction between the considerations underlying Briscoe and the considerations that would support absolute immunity for witnesses in adversarial pretrial proceedings.
 
 
 12
 We have also held in Demoran v. Witt, 781 F.2d 155, 157-58 (9th Cir.1986), that probation officers preparing presentence reports for the use of state courts are absolutely immune from damage liability under section 1983. See also Burkes v. Callion, 433 F.2d 318, 319 (9th Cir.1970), cert. denied, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971). In Demoran we noted that probation officers preparing presentence reports serve a function integral to the independent judicial process. Demoran, 781 F.2d at 158.
 
 
 13
 Burns contends that the immunity of witnesses at trial recognized in Briscoe does not extend to state officials who submit affidavits for use at a bond revocation hearing as in this case. He notes that, when witnesses testify by affidavit, the protections of cross-examination are absent. We conclude that this is not a sufficient basis for denying absolute immunity here. Under the analysis of Briscoe and Holt, Warwick is entitled to absolute immunity for the statements made in her affidavit to the court.
 
 
 14
 We look first, as the Supreme Court did in Briscoe, to the state of the common law at the time that section 1983 was enacted. See Briscoe, 460 U.S. at 330-34, 103 S.Ct. at 1113-15. As the Supreme Court has noted:
 
 
 15
 One important assumption underlying the Court's decisions in this area is that members of the 42d Congress were familiar with common-law principles, including defenses previously recognized in ordinary tort litigation, and that they likely intended these common-law principles to obtain, absent specific provisions to the contrary.
 
 
 16
 City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 258, 101 S.Ct. 2748, 2755, 69 L.Ed.2d 616 (1981) (quoted in Briscoe, 460 U.S. at 330, 103 S.Ct. at 1113). At common law, the fact that testimony was presented to a court in the form of an affidavit, rather than by a witness actually present during the proceedings, did not affect the absolute immunity to be accorded to the witness. See Veeder, "Absolute Immunity In Defamation: Judicial Proceedings," 9 Colum.L.Rev., 463, 476-77 n. 41 (1909) (cited in Briscoe, 460 U.S. at 333 & n. 12, 103 S.Ct. at 1114 & n. 12).
 
 
 17
 Burns argues that this case is controlled by the Supreme Court's decision in Malley v. Briggs, 475 U.S. 335, 340-41, 106 S.Ct. 1092, 1095-96, 89 L.Ed.2d 271 (1986), rather than by Briscoe v. LaHue. In Malley v. Briggs, the Supreme Court held that police officers were not entitled to absolute immunity for statements made in an affidavit submitted to a magistrate for the purpose of obtaining an arrest warrant. Id. The Court noted that, at common law, a "complaining witness" who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause. The police officers' actions were analogous to those of a complaining witness, so absolute immunity did not apply. Id. Malley is therefore not applicable to this case, because Warwick's position here is not analogous to that of a complaining witness who procures the issuance of an arrest warrant. Rather, Warwick's statements were used by the court in adversarial post-trial proceedings directed at determining whether Burns should remain in custody pending his appeal.
 
 
 18
 We noted in Holt, in addressing whether absolute immunity extends to testimony at probable cause hearings, that "the risk that false testimony will go undetected is minimized by submitting the testimony to 'the crucible of the judicial process'...." Holt, 832 F.2d at 127. In holding in Holt that there was "no principled basis" for distinguishing between the pretrial proceedings and the trial on the merits in determining whether absolute immunity should be granted to a police officer witness, we emphasized the existing checks in our system to prevent false testimony, including the supervision of a judge, the possibility of prosecution for perjury, and the opportunity for cross-examination. Id. at 125.
 
 
 19
 Although the opportunity for cross-examination is absent in this case, since Warwick's testimony was presented in the form of an affidavit, Burns was nevertheless afforded all the other protections of the adversary process and judicial supervision. The affidavit was submitted under possible penalty of perjury. Burns was entitled to present affidavits and witnesses of his own to refute the statements made by Warwick. Under these circumstances, we conclude that the rationale underlying Briscoe requires that Warwick be accorded absolute immunity for her statements to the court. Such immunity coincides with that recognized at common law. Moreover, as we noted in Holt, immunity removes the temptation to shade the truth in order to avoid civil liability.
 
 
 20
 Whether testifying at trial or in a pretrial proceeding, a witness who knows he may be subjected to costly and time-consuming civil litigation for offering testimony that he is unable to substantiate may consciously or otherwise shade his testimony in such a way as to limit potential liability. As a result, "the paths which lead to the ascertainment of truth" may be obstructed.
 
 
 21
 Holt, 832 F.2d at 125 (citing Briscoe v. LaHue, 460 U.S. at 333-34 & n. 13, 103 S.Ct. at 1114-15 & n. 13). This is equally true of those providing evidence in a post-trial judicial proceeding such as the bond revocation hearing in this case, or at a sentencing hearing. Cf. Demoran v. Witt, 781 F.2d 155, 157-58 (9th Cir.1986) (probation officers absolutely immune for statements in presentence reports prepared for the court). We conclude that Warwick was absolutely immune from suit under section 1983 for the statements in her affidavit. Summary judgment was properly granted for Warwick on Burns' claims against her.
 
 
 22
 Burns also argues that the district court erred in refusing to grant his motions to amend his complaint to add other defendants, appoint counsel under 28 U.S.C. Sec. 1915(d), and extend discovery. Denial of each of these motions is reviewed for abuse of discretion. See Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau, 701 F.2d 1276, 1292 (9th Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983) (motion to amend complaint); Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986) (motion for appointment of counsel under 28 U.S.C. Sec. 1915(d)); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1181 (9th Cir.1988) (motion to extend discovery).
 
 
 23
 Burns sought to add two other DSHS workers and Deputy Prosecutor Smith as defendants. A motion to amend a complaint may be denied if there is undue delay. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Burns knew of the roles played by the two DSHS workers in 1984. He did not move to amend the complaint to include them until 1986. Burns has offered no excuse for failing to include these parties in the original complaint or in his subsequent amendments. The district court did not abuse its discretion by denying the motion.
 
 
 24
 Nor did the district court err in denying Burns' motion to amend the complaint to include David Smith, the deputy prosecutor, as a defendant. As a prosecutor, Smith is accorded absolute immunity against charges that he used perjured testimony. Imbler v. Pachtman, 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976); Lerwill v. Joslin, 712 F.2d 435, 438 (10th Cir.1983) (city attorney's actions in prosecution and bail proceeding covered by absolute immunity). Directing Burns to add Smith as a defendant would have been futile; the district court did not err by not so directing.
 
 
 25
 Burns contests the denial of his motion to have counsel appointed pursuant to 28 U.S.C. Sec. 1915(d). Appointment of counsel in civil matters in the Ninth Circuit is restricted to "exceptional circumstances." Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir.1984). To show exceptional circumstances, the litigant must demonstrate the likelihood of success and the complexity of legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986). While Burns' case did raise a novel issue of law, we cannot say that the failure to appoint counsel here was an abuse of discretion.
 
 
 26
 Finally, Burns appeals the denial of his motions for further discovery. The district court denied Burns' motions because they were filed late. The district court did not abuse its discretion in denying Burns' motions for further discovery.
 
 
 27
 The decision below is AFFIRMED.