960 F.2d 152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Leon R. MURRAY, Plaintiff/Appellant,
v.
Paul BOWLIN, Defendant/Appellee.
 No. 91-35411.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 24, 1992.*
Decided April 15, 1992.
 
 1
 Before CHOY, SNEED and SKOPIL Circuit Judges.
 
 
 2
 MEMORANDUM*
 
 
 3
 Leon R. Murray, an Idaho state prisoner, appeals pro se the district court's summary judgment in favor of prison guard Paul Bowlin in Murray's 42 U.S.C. § 1983 action. We affirm.
 
 I.
 
 4
 Murray is an inmate at the Idaho State Correctional Institution ("ISCI"). Lieutenant Paul Bowlin is a correctional officer employed by the Idaho Department of Correction and assigned to ISCI.
 
 
 5
 On September 26, 1989, Murray erroneously was released from the maximum security section of the prison and was transferred to a medium custody section instead of the close custody section to which he had been assigned. Close custody classification involves a higher security level than medium custody status. The following day, when the classification error was discovered by prison officials, Bowlin was ordered to escort Murray back to the maximum security section until space could be provided for him in close custody.
 
 
 6
 Prior to transporting him the maximum security section, Bowlin conducted a pat search of Murray. When Bowlin began searching Murray's groin area, Murray slapped Bowlin's hand away, protesting that Bowlin had "no right to touch [him] in that area, and in that manner." Bowlin responded that he had the "right to touch [Murray] anywhere [Bowlin] wanted." Bowlin then completed the pat search, handcuffed Murray, and escorted him to the maximum security section of the prison where Murray subsequently was strip searched.
 
 
 7
 Under prison regulations, pat searches are required whenever a prisoner is moved from one section of the prison to another. These searches consist of patting down the body of a fully clothed inmate and regulations require a thorough check of the prisoner's groin and rectum area. Officers are warned that prisoners may use the "pocket at the fly base" of the pants to conceal drugs. At the time of the pat search at issue in this case, Bowlin was training two new correctional officers during their on-the-job rotation.
 
 
 8
 On May 7, 1990 Murray filed a complaint under § 1983 asserting that Bowlin, by conducting a pat search of Murray's groin area, violated his fourth amendment right to be free from unreasonable searches. He also claimed that the pat search constituted an eighth amendment violation because it caused him psychological injury and was conducted solely for harassment or retaliation purposes. The district court referred the case to a magistrate pursuant to 28 U.S.C. § 636(c).
 
 
 9
 Both parties filed motions for summary judgment. Murray also moved for appointment of counsel, additional time in the prison law library, and an extension of time in which to file an amended complaint. The magistrate granted Bowlin's motion for summary judgment and denied Murray's motions. Murray timely appeals.
 
 II. ANALYSIS
 A. Summary Judgment
 
 10
 (1) Fourth Amendment Claim
 
 
 11
 Murray contends that Bowlin's pat search of his genital area was unreasonable and violated his fourth amendment rights. This contention lacks merit.
 
 
 12
 Courts long have recognized that the constitutional rights of prisoners may be limited in the interests of prison institutional security and order. Bell v. Wolfish, 441 U.S. 520, 545 (1979); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Michenfelder v. Sumner, 860 F.2d 328, 331 (9th Cir.1988).
 
 
 13
 In the context of prison searches, the Supreme Court has developed a balancing test to evaluate the reasonableness of a prison search. Bell, 441 U.S. at 559. This test weighs the prison's security and penological needs against the prisoner's right to be free from unreasonable searches. Id. Factors to be considered in the balancing process include: 1) the scope of the particular intrusion; 2) the manner in which the search is conducted; 3) the justification for initiating the search; and, 4) the place in which the search is conducted. Id.
 
 
 14
 Applying the four factor Bell test to Murray's pat search we hold that the magistrate properly granted summary judgment in favor of Bowlin.
 
 
 15
 The first two Bell factors are the scope and manner of the search. Id. at 559. Murray argues that the search exceeded its constitutionally permissible scope because it included contact with his genital area. This contention lacks merit. Following Bell we have upheld a wide variety of institutional searches against fourth amendment challenges, including routine pat searches of male prisoners by female guards and of female prisoners by male guards which have included contact with the prisoners' genital area. Grummet v. Rushen, 779 F.2d 491, 495-496 (9th Cir.1985) (female guards, male prisoners); Jordan v. Gardner, (Nos. 90-35307, 90-35552, slip. op. 3407. 3417-18) (as amended Apr. 2, 1992) (male guards, female prisoners). In both Grummet and Jordan we found that the scope and the manner, of the pat searches was reasonable because the searches were conducted in a brief and professional manner while the prisoners were fully clothed, and that the security and efficiency concerns of the prison justified the "brief invasions of privacy occasioned by the cross-gender pat searches." Id.; Grummet, 779 F.2d at 495-96. Because Bowlin's pat down of Murray was analogous to those we upheld as constitutional in Grummet and Jordan (with the exception that the pat search here was performed by a prison guard of the same gender) this search did not exceed its constitutionally permitted scope.
 
 
 16
 Murray next argues that the manner of search was unprofessional and offensive because the time Bowlin spent pat searching his groin area was too long. To avoid summary judgment in favor of Bowlin, Murray cannot rely solely on the allegations in his pleadings but must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Franklin v. Murphy, 745 F.2d 1221, 1235 (9th Cir.1984). As such, he must present some "significant probative evidence tending to support the complaint." First Nat'l Bank v. Cities Serv., 391 U.S. 253, 290 (1968). Murray, however, has failed to provide probative evidence which demonstrates that the manner of the search was unprofessional or that Bowlin's search of Murray's groin area was unreasonably lengthy. Prison policy requires that pat searches of the groin area be thorough. The search was conducted while Murray was fully clothed and it apparently was accomplished without any type of verbal or physical abuse. Furthermore, at the time of the search, Bowlin was training two new correctional officers in the importance of conducting a thorough and careful pat search. Given Murray's failure to provide "significant probative evidence" and our deference to prison policy, we agree with the magistrate's determination of this factor.
 
 
 17
 The third factor under Bell is the justification for the search by prison officials. Bell, 441 U.S. at 559. Murray argues that the pat search was unnecessary because he would be stripped searched immediately upon reaching the maximum security section and because he would be handcuffed behind his back while being transported through the prison. Bowlin counters that the prison regulation, which requires officers to conduct a pat search of prisoners prior to transporting them to a different prison section, penologically is justified because prisoners could exchange contraband during the transfer process or even attack a guard with a concealed weapon. Although tempered by the fact that the prisoner is restrained while transported, we believe that these justifications have merit and are entitled to deference and thus uphold the district court's judgment with regard to this factor as well.
 
 
 18
 The final factor of the Bell balancing test examines the physical location of the search within the prison area. Id. at 559. Murray's pat search was conducted in the foyer near the entrance of the building. According to Bowlin, the foyer is the most common place for pat searches to take place in any correctional institution because it is the safest area for officers to be stationed. Moreover, Murray does not contend that the place of the search presented any particular ground for embarrassment or humiliation. Thus, this last factor also supports the reasonableness of the search.
 
 
 19
 In sum, applying the factors set out in Bell, under a standard that defers to prison policy, id. at 547-58, Bowlin's pat search of Murray was reasonable and did not violate the inmate's rights under the fourth amendment. Accordingly, the magistrate did not err in granting summary judgment in favor of Bowlin on the issue.
 
 
 20
 (2) Eighth Amendment Claim
 
 
 21
 Murray contends that because the pat search of his genital area caused him psychological injury and was done in retaliation for, or as harassment relating to, his pending court litigation violated his eighth amendment rights.[1]
 
 
 22
 First, even assuming that Murray suffered psychological harm as a result of the pat down of his genitals, that pat down did not violate Murray's eighth amendment rights. The eighth amendment proscribes "the 'unnecessary and wanton infliction of pain,' which includes those sanctions that are 'so totally without penological justification that it results in the gratuitous infliction of suffering.' " Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982) (quotation omitted). Even assuming that the inmates had proven a probability of psychological harm, in Jordan we held that pat down searches, which included touching of the groin area of female inmates by male guards, were not so without legitimate penological justification as to amount to the kind of gratuitous infliction of suffering required to make out an eighth amendment violation. Jordan, slip op. at 3418-22. Nor did such pat downs offend the "evolving standards of decency" so as to establish such a violation. Id. at 3421-22 (citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir.1985). Because the same legitimate penological justifications of prison security are present in this case, even assuming that Murray suffered psychological harm, such a same gender pat search does not constitute the kind of unnecessary and wanton infliction of pain that is proscribed by the eighth amendment.[2]
 
 
 23
 Second, although inmates are protected under the eighth amendment from searches that are performed solely as "calculated harassment," Hudson v. Palmer, 468 U.S. 517, 530 (1984); Vigliotto v. Terry, 873 F.2d 1201, 1203 (9th Cir.1989), and pat down searches that are conducted in retaliation for an inmate's seeking legal redress in the courts violate the inmate's right of access to the courts, Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.1989), Murray has failed to show the existence of a genuine issue of material fact as to whether Bowlin's actions were retaliatory in nature or performed solely for calculated harassment. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 24
 Bowlin asserts in a sworn affidavit that he was unaware of the Murray's pending litigation at the time of the search and Murray has failed to rebut this assertion. Moreover, the pat search was performed pursuant to prison regulations and Murray has presented no contrary evidence indicating that it was done to harass him.
 
 B. Denial of Appointment of Counsel
 
 25
 Murray requested appointment of counsel under 28 U.S.C. § 1915(d). Appointment of counsel under § 1915(d) is left to the sound discretion of the trial court and is granted only in "exceptional circumstances" where the litigant demonstrates his likelihood of success on the merits and the complexity of the legal issues involved. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Burns v. County of King, 883 F.2d 819, 824 (9th Cir.1989); Wilson v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986). The magistrate found that both the law and the facts of this case were straightforward and concluded that appointment of counsel was unnecessary. Furthermore, a review of the record confirms that Murray failed to demonstrate that he was likely to succeed on the merits. Given these circumstances, the magistrate did not abuse his discretion by denying Murray's motion for appointment of counsel.
 
 
 26
 C. Denial of Motion for Additional Library Time
 
 
 27
 Murray argues that the magistrate abused his discretion in failing to find that Murray was denied adequate access to the prison law library. Indigent inmates have a constitutional right to meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 821-22 (1977). In Bounds the Court stressed that providing prisoners with access to adequate law libraries is one acceptable method to ensure meaningful access to the courts, alternative means may be employed to achieve that goal, including provision of adequate assistance from persons trained in the law. Id. at 830-32; Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 855 (9th Cir.1985).
 
 
 28
 Murray was allowed six hours per week (three hours, twice a week) in the law library to work on his case and in his motion for additional time he requested fifteen hours per week. In his objection to Murray's motion for additional use of the prison library, Bowlin cited security and economic reasons for limiting Murray's access. According to Bowlin, allowing Murray additional research time would have resulted in the mixing of various custody levels in the law library. This would have required additional staff time to provide for extra security. The prison, according to Bowlin, did not have the staff available to allow for such scheduling changes.
 
 
 29
 Although Bowlin's justification for limiting Murray's library use is persuasive, id. at 858, it may be questionable whether six hours per week allows a prisoner sufficient time to research, prepare, and prosecute an action. However, we need not address whether six hours of library time is sufficient in itself to satisfy the constitutional requirement of meaningful access to the courts. Murray, however, has stated that in addition to this library time an inmate law clerk was available to help him prepare his case. Thus, even assuming that the six hours of library access alone would not constitute "meaningful access," that time in conjunction with the availability of an inmate law clerk's assistance afforded Murray the meaningful access to which he was entitled. Wood, 900 F.2d at 1335 (limited access to satellite library in segregation unit in conjunction with assistance from inmate law clerk was "meaningful access"); Toussaint v. McCarthy, 801 F.2d 1080, 1110 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987) (if prisons deny reasonable access to law library, they must provide legal assistance). Given these circumstances, we conclude that the magistrate did not abuse his discretion in finding that Murray was not denied "meaningful access to the courts."
 
 
 30
 D. Denial of Motion for Leave to Amend the Complaint
 
 
 31
 Murray contends that the magistrate abused his discretion by denying Murray's motion to amend his original complaint. This final contention also fails.
 
 
 32
 On August 16, 1990, during a telephonic hearing regarding the pending summary judgment motions, Murray requested additional time to supplement his motion for summary judgment. The court granted Murray thirty days in which to submit any additional briefing or affidavit and September 16, 1990 was the final day for filing that additional information. On September 10, 1990 Murray filed a motion requesting additional time to file an amended complaint. That motion, however, did not contain any information as to why Murray desired to file an amended complaint or what the additional complaint would allege. Murray filed the amended complaint on September 28, 1990, the same day as the magistrate filed his order granting Bowlin's motion for summary judgment. The order denied Murray's motion for additional time to amend his complaint, but did not refer to the amended complaint filed that same day.
 
 
 33
 We conclude that the magistrate did not abuse his discretion in denying Murray's motion for leave to amend because Murray unduly delayed in filing this motion and because many of the amendments contained in the amended complaint would be futile.
 
 
 34
 "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised in the amendment in the original pleading." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir.1990). Murray's amended complaint contains a variety of new allegations of civil rights abuses and also names a number of new defendants. The new allegations, however, all relate to a December 1987 incident and to claimed violations of his eighth amendment rights alleged to have occurred in the wake of this incident but prior to the time that Murray filed his original complaint in this case. Thus, although Murray was aware of the facts and theories relevant to these additional charges before he commenced this lawsuit, he not only failed to include these allegations in his original complaint but delayed in filing a motion to amend his original complaint until after the magistrate already had conducted a hearing regarding the pending motions for summary judgment. Given these circumstances, Murray's delay in filing the new allegations set out in his amended complaint is inexplicable and unjustified.[3]
 
 
 35
 Furthermore, as to those parts of the amended complaint that relate to allegations already contained in the original complaint, the proposed amendments would be futile because they fail to lend any additional support to Murray's contentions in his original complaint that the pat search violated his fourth and eighth amendment rights. Jarvis v. Regan, 833 F.2d 149, 155 (9th Cir.1987). The assessment of futility necessarily is tied to our determination that the trial court properly granted Bowlin's motion for summary judgment on Murray's constitutional claims. Jackson, 902 F.2d at 1388-89 n. 4. With regard to these claims the amended complaint simply reiterates Murray's meritless contentions that pat searches of the genital area are unconstitutional. It neither asserts additional injury as a result of the search procedure, nor offers new allegations or evidence that Bowlin's actions in conducting the pat search were willful or wanton or conducted for harassment purposes. Given these circumstances, we cannot say that the magistrate abused his discretion by denying Murray's motion to leave to amend.
 
 
 36
 We hold that the magistrate properly granted summary judgment in favor of Bowlin on both the fourth and eight amendment claims and that he did not abuse his discretion in denying Murray's motions for appointment of counsel, for additional library time, and for leave to amend the complaint.
 
 
 37
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Murray previously had filed a habeas corpus action in state court alleging that prison officials violated due process when they found him guilty of assault on a fellow prisoner. Murray v. Idaho, No. 3121 (4th Dist. Idaho, Apr. 30, 1990)). The court in that case found for Murray on one of the issues and ordered a new disciplinary hearing to be held on the assault charges
 
 
 [2]
 The Supreme Court's recent decision in Hudson v. McMillian, 112 S.Ct. 995 (1992) in which it held that a showing of serious injury is unnecessary for an eighth amendment violation if the inmates can demonstrate that prison officials used excessive physical force against him does not have an effect on our determination of this case
 
 
 [3]
 Notably, with regard to the new allegations arising out of this December 1987 incident, Murray of course is free to file a new complaint containing those allegations at any time in the future