29 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roy ROMINE; Georgia Romine; Jesse M. Romine, by his
parents and next friends Roy and Georgia Romine; Cassandra
Ann Romine, by her parents and next friends Roy and Georgia
Romine; Sara Ann Romine, by her parents and next friends
Roy and Georgia Romine, Yolanda Crossman, by her mother and
next friend Georgia Romine; Robert Schaffer; Sara T.
Schaffer; Karen R. Schaffer; Julie Ann Schaffer McGee;
Robert L. McGee, by his mother and next friend Julie Ann
Schaffer McGee; Nanci A. Schaffer Runyan; Jo E. Jack
Runyan; Kenneth B. Runyan, by his parents and next friends
Nanci and Jo Runyan; Robert L. Moir, Plaintiffs-Appellants,
v.
BONNER/BOUNDARY TASK FORCE; the Members of the
Bonner/Boundary Task Force, individually and in their
official capacities; the County of Boundary, a municipal
corporation; Denise Woodbury, individually and as Boundary
County Prosecutor; Bruce Whittaker, individually and as
Sheriff of Boundary County; Lonnie Ekstrom, individually
and as Boundary County Deputy Sheriff; Ron Navarro,
individually and as Boundary County Deputy Sheriff; Rick
Alonzo, individually and as Boundary County Deputy Sheriff;
Mac McLaughlin, individually and as Boundary County Deputy
Sheriff; Jim Sweet, individually and as Boundary County
Deputy Sheriff; Brian Baldwin, individually and as the
confidential informant in the employ of Boundary County;
the City of Bonners Ferry, a municipal corporation; David
Kramer, individually and as a police officer for the City of
Bonners Ferry; Paul Carroll, individually and as
Enforcement Officer for State of Idaho Health & Welfare
Department; Letricia Pemp, individually and as agent for
State of Idaho Health & Welfare Department; John Does 1-4,
individually and in their capacity as pilots in the employ
of the State of Idaho and/or Boundary County, Defendants-Appellees.
 No. 93-36031.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 11, 1994.*
Decided July 21, 1994.
 
 Before: GOODWIN, D.W. NELSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The above-named plaintiffs (collectively "Appellants") appeal the district court's grant of summary judgment and dismissal of their claims in a civil rights action brought by them against the City of Bonners Ferry, Boundary County, and several named defendants ("Appellees"). Appellants also challenge the award of attorneys' fees. We affirm.
 
 I.
 
 3
 Appellant Roy Romine challenges the legality of searches conducted by Boundary County authorities in January 1982 and August 1987. See Complaint Ct. 1 paragraphs 1-2. Because the complaint in this case was filed in August 1991, more than two years after Appellant Romine became aware of the complained of events, these claims are barred by the applicable two-year statute of limitations. See Hallstrom v. Garden City, 991 F.2d 1473, 1476-77 (9th Cir.), cert. denied, 114 S.Ct. 549 (1993).
 
 
 4
 Romine also challenges the legality of his 1989 arrest in connection with charges that he stole logs belonging to Mike McGovern and his February 1991 arrest for the battery of Brian Baldwin. Complaint Ct. 1 paragraphs 9, 11. Romine contends that these arrests were illegal merely because he ultimately was acquitted. These allegations do not state a claim for a constitutional violation. See, e.g., Peirson v. Ray, 386 U.S. 547, 555-57 (1967).
 
 
 5
 Romine also alleges that, in January 1990, Deputies Alonzo and Ekstrom illegally searched his property after McGovern made additional complaints. See Complaint Ct. 1 p 10. However, Romine conceded that he consented to the search. See Romine Dep. at 61-62. Consequently, the district court correctly granted summary judgment on this claim in favor of the defendants. See, e.g., Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Sealey, 830 F.2d 1028, 1032 (9th Cir.1987).
 
 
 6
 We also hold that summary judgment appropriately was granted on Romine's claim that a search warrant executed on July 15, 1991, was issued without probable cause and that the officer involved, Deputy Ekstrom, conspired with certain informants to supply the magistrate with false information. Complaint Ct. 1 p 13. Appellant introduced no evidence that Ekstrom acted in bad faith or any information that casts doubt on the reliability of the information that was provided to Ekstrom.[1] Accordingly, because there are no disputed issues of fact, whether probable cause existed is a question of law that may be resolved at summary judgment. See, e.g., United States v. Dunn, 946 F.2d 615, 619 (9th Cir.1991). We conclude that Ekstrom's representations to the magistrate that the informant had detailed knowledge of Romine's property (details that Ekstrom was able to verify) and extensive knowledge of the strands of marijuana that Romine purported to show him, see ER Tab 8, at 2-6, established probable cause to issue a warrant. See, e.g., United States v. Elliott, 893 F.2d 220, 223 (9th Cir.1990) (" 'A detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability.' " (quoting United States v. Estrada, 733 F.2d 683, 686 (9th Cir.), cert. denied, 469 U.S. 850 (1984) (internal quotations omitted))), amended on other grounds, 904 F.2d 25 (9th Cir.), cert. denied, 498 U.S. 904 (1990).
 
 
 7
 Romine also claims that, immediately after he was found not guilty on the charge of battery against Baldwin in 1991, his former attorney, Denise Woodbury, a part-time assistant prosecutor, threatened him with the loss of joint custody of his children unless he left the area. See Complaint Ct. 1 p 12. At his deposition, however, Romine conceded that the complaint does not reflect the substance of his conversation with Woodbury. Romine stated that the two of them "ran into each other" and that she merely discussed with him the possibility that, had he been convicted, he would have lost custody. See Romine Dep. at 78-79. He also admitted that he and Woodbury previously had discussed his leaving the county. See id. at 78. In addition, he admitted that Woodbury had no involvement with the battery case, understood the conversation to be friendly, and that they gave each other a hug. See id. at 80-81. Finally, Romine stated that he didn't draft the portion of the complaint that contained the allegations against Woodbury, that he "didn't mean to implicate Mrs. Woodbury" in the lawsuit, and that he "didn't have any problem" dropping the claim made against her. Id. at 82; see also id. at 105. Viewed most favorably to Romine, this testimony, which repudiated entirely the allegations made in the complaint, cannot support a claim that Woodbury violated Romine's constitutional rights, or that she acted "under color of state law."
 
 
 8
 Finally, Romine alleges constitutional violations of his rights and the rights of his minor-child, Cassie Romine, stemming from certain investigations undertaken by officials from Boundary County, Bonners Ferry, and the Idaho Health and Welfare office. Romaine first alleges that he was "ordered" to appear at the Health and Welfare Office in early 1988, and that Cassie was taken away from him without authority. Complaint Ct. 1 p 4. However, Romine admitted that he was not ordered to bring his children to the office. See Romine Dep. at 128, 131. He also admitted that he went to the Health and Welfare Office voluntarily to help in its investigation of allegations that his childrens' stepfather, Aaron Fodge, had sexually abused the children. See id. at 128-29. Finally, Romine conceded that the questioning of his children was not wrongful. See id. at 132. Having repudiated the factual basis of his claim, Romine cannot now contend that he or his children suffered a deprivation of their constitutional rights. Accordingly, summary judgment on this claim was proper.
 
 
 9
 Romine also alleges that officers from Bonners' Ferry, Boundary County, and the Idaho Health & Welfare Office violated his and his daughter's constitutional rights by taking pictures of Cassie naked in connection with an investigation of allegations of child abuse made against Romine by his ex-wife in February 1988, see Complaint Ct. 1 p 5; Romine Dep. at 99, and in November 1989, see Complaint Ct. 1 p 8. Romine does not identify the specific constitutional right violated, but appears to claim that he had a substantive due process right to prohibit the officers from taking these pictures without his consent even when he was the subject of a child abuse investigation. See Romine Dep. at 101, 105.[2]
 
 
 10
 Romine has not alleged that the officers acted unreasonably in light of his ex-wife's complaints, or that, even if they acted intrusively, the officers' behavior was anything more than negligent. See Appellant's Brief at 12. We previously have held, however, that "[m]ere negligence.... does not trigger the substantive due process protections of the Fourteenth Amendment and therefore does not state a claim under section 1983." Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989). Romine, then, has not established that the officers violated a right that was clearly established at the time of the allegedly unlawful conduct.[3] Accordingly, summary judgment against the officer defendants properly was granted on grounds of qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); accord Palmer v. Sanderson, 9 F.3d 1433, 1435 (9th Cir.1993). Finally, Romine has not alleged that the specific offending acts were conducted as part of a "custom or policy" sanctioned by either Boundary County or the City of Bonners Ferry. Therefore, these entities cannot be subject to liability under Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978).[4]
 
 
 11
 Romine also claims that the officers illegally seized a marijuana pipe in the course of the November 1989 investigation of the child abuse charges against him. See Complaint Ct. 1 p 8; Romine Dep. at 138-40. Both Roy and Georgia Romine, however, testified that Georgia consented to the entry of the officers. See Romine Dep. at 135; G. Romine Dep. at 18. The pipe, which then was in plain view, constituted "illegal paraphernalia" under Idaho law. See Idaho Code Sec. 37-2734A (Michie Supp.1993). Accordingly, we conclude that its seizure was lawful. See United States v. Nohara, 3 F.3d 1239, 1243 (9th Cir.1993).
 
 
 12
 Finally, Romine alleges that, a week after this incident, he was ordered to appear at the Boundary County Sheriff's office, where he claims that an interrogation of him was tape-recorded and that he was coerced into signing a release to obtain his marijuana pipe. Complaint Ct. 1 p 8. However, Romine admitted that his conversation was not recorded. See Romine Dep. at 107-08. Moreover, Appellants have produced no facts to support their claim that Romine was "coerced" into retrieving his property. Accordingly, we hold that summary judgment was proper on these claims.
 
 II.
 
 13
 In their complaint, the Appellants describe a number of incidents in which "large military-looking, olive-draw helicoptor[s]" conducted close overflights over several areas. Complaint Ct. 2 p 2. According to Appellants, these overflights occurred in early August 1991 (1) over a field in which the Romine family was having a picnic, see id. p 3; (2) over the Silver Springs Community in which the Schaffers lived, see Schaffer Dep. at 55-62; and (3) near property owned by Appellant Moir, see Moir Dep. at 20-24. Appellants allege that these overflights constituted illegal searches that "were done with the knowledge and cooperation of Boundary County Sheriff Bruce Whittaker," id. p 2, and were "part of an ongoing county-wide policy and conspiracy" to deprive Appellants of their civil rights.
 
 
 14
 Appellants have been unable to produce any facts supporting their allegation that the county directly conducted these operations. Sheriff Whittaker testified that the County did not own or operate any helicopters in August 1989, see ER Tab 8, at 3, and Appellants do not controvert this assertion. Consequently, Appellants' claims can survive summary judgment only if they have "allege[d] specific facts to support the existence of a conspiracy." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.) (citing Burns v. County of King, 883 F.2d 819, 821 (9th Cir.1989)), cert. denied, 113 S.Ct. 559 (1992).
 
 
 15
 The record contains evidence that the County knew of, and cooperated to some degree with, the state drug task forces. See Schaffer Dep. at 62-63; Moir Dep. at 62-63; Whittaker Aff'd at 3, ER Tab 7, at 3. However, Appellants have failed to produce any facts from which a reasonable jury could conclude that the County entered into " 'an agreement or "meeting of the minds" to violate [Appellants'] constitutional rights.' " Lebbos v. Judges of the Superior Court, 883 F.2d 810, 818 (9th Cir.1989) (quoting Fonda v. Gray, 707 F.2d 435, 438 (9th Cir.1989) (emphasis added)); accord Woodrum, 866 F.2d at 1126. Robert Schaffer stated in his deposition that Whittaker stated that the County "was working in cooperation" with the helicopters, Schaffer Dep. at 63, and Moir stated in his deposition that Whittaker told him that there was "State and local ... joint venture." Moir Dep. at 63. However, this testimony is perfectly consistent with Whittaker's uncontroverted account of the County's precise role: that the County, if probable cause was found, would provide the necessary backup and ground support if asked by a drug task force. Whittaker Aff'd at 3, ER Tab 7, at 3. No evidence indicates that the County agreed to, or acquiesced in, the intrusive helicopter overflights, or that the County had any role in the planning, execution, or control of the helicopter operations. Indeed, according to Moir's deposition testimony, Whittaker told him that the County initially was supposed to have an observer in one of the helicopters, but that this ultimately was not permitted. See Moir Dep. at 63.
 
 
 16
 Accordingly, even assuming arguendo that the intrusive overflights violated Appellants' constitutional rights, cf. Florida v. Riley, 488 U.S. 445, 455 (1989) (O'Connor, J., concurring), Appellants have not shown that the County "share[d in] the general conspiratorial objective" alleged. Fonda v. Gray, 707 F.2d 435, 438 (9th Cir.1983).
 
 III.
 
 17
 The Schaffers also claim constitutional violations stemming from the Boundary County Sheriff's alleged failure to return certain items seized in November 1981 and for which a "Return of Property" order was signed in 1988. Complaint Ct. 3 p 1. This claim is barred by the applicable two-year statute of limitations. See Hallstrom, 991 F.2d at 1476-77. Moreover, the Schaffers settled this claim in a July 1989 settlement to a 1985 lawsuit.
 
 IV.
 
 18
 Summary Judgment also properly was granted against Appellant Robert Moir on the claims raised in count four of the original complaint. First, with respect to the allegedly illegal search conducted by Deputies Sweet and McLaughlin in early April 1991, see Complaint Ct. 4 p 1, Appellants did not introduce any evidence that could support the conclusion that the arrest warrant in question was issued without probable cause, or that the searches were executed in an unreasonable manner. Second, Moir's allegations that he suffered a constitutional deprivation when Deputy McLaughlin took the keys to his car on April 20, 1991, fail to state a claim. Moir, who was subject to an arrest warrant at the time, fled from his vehicle after discovering the presence of the police. It is uncontroverted that the police took his keys in order to ensure that the car would not be stolen. This action falls squarely within the "community caretaking function," see Cady v. Dombrowski, 413 U.S. 433, 441 (1973); Hallstrom, 991 F.2d at 1477 n. 4. Because no improper motive for the seizure is alleged, see Hallstrom, 991 F.2d at 1477 n. 4, we affirm the grant of summary judgment on this claim.[5]
 
 V.
 
 19
 Appellants also challenge the district court's denial of leave to amend to file their first amended complaint. The magistrate concluded that permitting an amendment would result in unreasonable delay, and that the "amended complaint raises no issues or theories which could not have been included in the original complaint." ER Tab 18 at 26. In addition, the magistrate concluded that the amendment would be futile because "[p]laintiffs are not entitled to relief for any of the claims set forth in the amended complaint." Id.
 
 
 20
 Even in view of "Rule 15's policy of favoring amendments to pleadings ... with 'extreme liberality,' " United States v. Webb, 655 F.2d 977, 979 (9th Cir.1981), we can find no abuse of discretion, see Roth v. Garcia Marquez, 942 F.2d 617, 628 (9th Cir.1991). Appellants allege in the amended complaint that the Health & Welfare Department violated the Romine children's constitutional rights by not removing them from the custody of their abusive mother and stepfather. See Amend. Complaint p 35. However, these allegations do not state a claim for a constitutional deprivation. See DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189 (1989).[6] Appellants also claim that the Boundary County Sheriff's office committed a constitutional tort by refusing to prosecute Mike McGovern despite a complaint filed against him by Romine. See Amend. Complaint p 42. However, even if these allegations state a claim cognizable under section 1983 the prosecutor would have absolute immunity. See Ashelman v. Pope, 793 F.2d 1072, 1076 (9th Cir.1986). Finally, Appellants added allegations that additional helicopter overflights of their properties occurred in late August 1991, and that these operations were "part of an ongoing county-wide policy and conspiracy" to deprive them of their constitutional rights. Amend. Complaint paragraphs 55-59. However, as with the allegations made in the original complaint, Appellants have failed to allege the necessary "specific facts to support the existence of a conspiracy among the defendants." Buckey, 968 F.2d at 794. Consequently, the district court properly rejected these proposed amendments as futile. See Bell v. City of Kellogg, 922 F.2d 1418, 1425 (9th Cir.1991).[7]
 
 
 21
 In addition, Appellants appear to argue that the district court improperly terminated discovery prior to granting summary judgment. However, Appellants have not alleged what additional facts they hope to discover. It is well-established that " '[t]he mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under Fed.R.Civ.P. 56(f).' " Apache Survival Coalition v. United States, 21 F.3d 895, 911 n. 17 (9th Cir.1994) (quoting Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades Dist. Council, 817 F.2d 1391, 1395 (9th Cir.1987)). Consequently, Appellants' vague contention concerning lack of discovery does not provide a basis for overturning the district court's grant of summary judgment.
 
 VI.
 
 22
 We also find no abuse of discretion in the district court's award of attorneys' fees pursuant to 42 U.S.C. Sec. 1988 or in the award of costs. As evidenced by Romine's testimony, many of Appellant's allegations were made without any factual or legal basis whatsoever. Consequently, they were " 'meritless in the sense [of being] groundless or without foundation.' " Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 202 (9th Cir.1988) (quoting Hughes v. Rowe, 449 U.S. 5, 14 (1980) (per curiam)), cert. denied, 490 U.S. 1081 (1989). We recognize that Appellants have proceeded pro se, cf. Miller v. Los Angeles County Bd. of Educ., 827 F.2d 617, 620 (9th Cir.1987), and that "[a] court should award attorney's fees to civil rights defendants only in exceptional cases." Zimmerman v. Bishop Estate, Nos. 92-15794, 92-16408, slip op. 5583, 5595 (9th Cir. May 31, 1994) (citing Mitchell, 861 F.2d at 202). However, given the factual inaccuracies in Appellants' complaint, "[t]his is such a case." Id.
 
 
 23
 Appellants have submitted to us a document entitled "Plaintiff/Appellants' Response to Motion to Dismiss Appeal and Motion for Stay of Execution of Judgment." We construe this document as a request to stay execution on the district court's award of attorneys' fees and costs pending appeal. Because Appellants have failed to "show the reasons for the relief requested and the facts relied upon" in support of their motion, Fed.R.App.P. 8(a), and because we uphold the district court's award on the merits, the motion is denied.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his deposition, Romine asserted that "the informants [were] telling stories again," Romine Dep. at 89, but admitted that he had no knowledge as to who the informant was that led to the issuance of the July 15, 1991 warrant, see id. at 90. His only source of information, it appears, was the transcript of the proceeding before the judge at which the warrant was obtained. See id. at 90-91. He also admitted that he had no factual basis for alleging that Ekstrom supplied the magistrate with false information. See id. at 92
 
 
 [2]
 A procedural due process claim clearly would fail on the merits. See Woodrum v. Woodward County, 866 F.2d 1121, 1125 (9th Cir.1989)
 
 
 [3]
 We further note that, even had Romine alleged that the officers acted more than negligently, the specific substantive due process right in "custody and care of his ... children," Caldwll v. LeFaver, 928 F.2d 331, 333 (9th Cir.1991), that he appears to allege that the officers violated was not clearly established. See Doe v. State of Louisiana, 2 F.3d 1412, 1420 (5th Cir.1993), cert. denied, 114 S.Ct. 1189 (1994); Landstrom v. Illinois Dep't of Children & Family Servs., 892 F.2d 670, 676-77 (7th Cir.1990); Franz v. Lytle, 791 F.Supp. 827, 833 (D.Kan.1992), aff'd, 997 F.2d 784 (10th Cir.1993). Nor was it clearly established that the officers' conduct violated his or Cassie's right to privacy. See Mayronne v. Vaught, 843 F.Supp. 1096, 1102 (E.D.La.1994). This provides an additional and independent reason to find the officer defendants entitled to qualified immunity
 
 
 [4]
 The Romines also appear to allege that Health and Water agents Carroll and Pemp improperly obtained a water sample. See Complaint Ct. 1 p 3. There is no claim that their conduct was improper under Idaho law, and the Romines do not explain how this conduct violated their rights. Consequently, this claim too properly was dismissed for failure to state a claim
 
 
 [5]
 Appellants also assert that the dismissal of the State of Idaho from the suit was fundamentally unfair. Appellant's Brief at 10. However, the State's dismissal is compelled by the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam)
 
 
 [6]
 The amended complaint also alleges that when Romine brought Cassie to the Health and Welfare Department at which she was "seized" by Ekstrom and Pemp, that Ekstrom "gave Mr. Romine $20.00 for gas money to leave town with Jesse" instead of "advising ... Romine of the required shelter care hearing." Amend. Complaint p 36. As this claim raises a new theory, clearly could have been raised previously, and its addition would require additional depositions and discovery, the magistrate did not abuse his discretion in refusing to permit the amendment. See, e.g., Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387-89 (9th Cir.1990)
 
 
 [7]
 Appellants also claim that Baldwin and McGovern "harassed" Romine following the filing of the initial complaint. Amend. Complaint paragraphs 49-50. Although Romine avers generally that Baldwin and McGovern were government informants, he alleged no facts that could support his conclusion that they acted in their capacity as government agents in undertaking the complained of acts. Because Appellants have not alleged facts that could support a finding of "state action," see, e.g., United States v. Attson, 900 F.2d 1427, 1433 (9th Cir.), cert. denied, 498 U.S. 961 (1990), this claim too properly was dismissed as futile. Similarly, Romine alleged no facts that could establish his claim, see Amended Complaint p 45, that a search conducted on his residence on February 5, 1991, violated his constitutional rights